**BOTKIN, Appellant, v. STATE MEDICAL BOARD, Appellee.**

Common Pleas Court, Summit County.

No. 168744. Decided October 7, 1950.

William H. Rosenfeld, Cleveland, for appellant.

Charles Linch, for Atty. Genl. Duffy, Columbus, for appellee.

**OPINION**

By EMMONS, J.

This cause comes before this Court upon an appeal from the order of the State Medical Board of Ohio heretofore entered by it on its journal on October 11, 1948.

The facts in this case are briefly these: On June the 12th, 1946, Earl Botkin, the appellant herein, who holds a state license to practice mechanotherapy, was charged by the State Medical Board with using thiamine chloride, liver extract, sulphathiazole ointment, nupercainal, quinocaine, metycaine and otozole, and that the use of these remedies was in violation of the rules and regulations of the State Medical Board governing limited practices, as provided in §1274-1 GC, and violative of the provisions of §1274-3 GC.

One Lawrence Dietrich, inspector for the Medical Board, testified that on May 21, 1946, he called at the office of Earl Botkin and that there he saw in Botkin's office bottles labeled thiamine chloride, liver extract, nupercainal, quinocaine, metycaine and otozole, and a jar labeled sulphathiazole ointment.

He further testified that Botkin told him that he administered thiamine chloride, liver extract, nupercainal by hypodermic injection, the latter as a local anesthetic.

Deitrich also testified that Botkin admitted he used quinocaine as a local anesthetic, and that he used metycaine for an anesthesia and otozole to treat an ear infection.

Mr. Dietrich testified he asked him if he would discontinue the use of these remedies in his limited practice and that Botkin just shrugged his shoulders.

Botkin at no time during the hearing before the referee, Clemons Frank, or at any time, testified in his own behalf, nor did he introduce any testimony whatsoever to deny Dietrich's testimony or the testimony of Doctors Sollman and Platter who also testified at the hearing before the referee; and that thereafter on August 3, 1948, a copy of the opinion of the referee was filed with the State Medical Board, which Board adopted the recommendations of the referee and on

October 5th, 1948, entered an order revoking the license is-- sued to Earl Botkin, the appellant herein, to practice that limited branch of medicine known as mechanotherapy, and from which order this appeal is taken.

At the outset it will be noted that the power to revoke a limited practitioner's license is governed by §§1274-6 and 1275 GC.

Sec. 1274-6 GC provides, in part, that:

"In addition to the power of the board to revoke or sus-- pend certificates provided for in §1275 GC, it may also re- voke and suspend the certificate of any one to whom a limited certificate has been issued upon proof of the viola- tion of the rules and regulations established by the board governing such limited practice."

Part of the general rules and regulations of the Board governing limited practitioners is as follows:

"The certificate does not permit the holder to treat in- factious, contagious or venereal diseases nor to prescribe or administer drugs or to perform major surgery."

Sec. 1275 GC provides in part

"The state medical board may refuse to grant a certificate to a person guilty of fraud in passing the examination or at any time guilty of felony or gross immorality, grossly un- professional or dishonest conduct, or addicted to the liquor or drug habit to such a degree as to render him unfit to practice medicine or surgery."

24 Oh Ap 154, Seitz v. The Medical Board:

"The term 'gross immorality' is descriptive of a conduct."

Moore v. Strickling, 46 W. Va. 515:

"Gross immorality must be determined according to the common understanding of the ordinary law-abiding and rea- sonable citizen of the community; that the term implies a wilful, flagrant or shameful course of conduct showing a moral indifference to the opinions of the good and respect- able members of the community."

Mingo County Medical Society v. Simon, 20 Southeastern Reporter, 2nd Series, 807:

"In a proceeding to revoke the license of a person to practice a profession on the statutory ground of 'gross immorality' such term will be measured by the standards of the profession involved in the absence of a statutory definition."

State Board of Medical Registration and Examination v. Scherer, 46 Northeastern Reporter, 2nd Series, 602:

"A licensed naturopathist, misrepresenting himself to the public as entitled to practice medicine, prescribing drugs and medicine and misrepresenting to patients powers of machine used by him in diagnosis and treatment of diseases is guilty of gross immorality justifying revocation of his license by the State Board."

The appellant complains about the indefiniteness of the charge made by the Secretary of the Board, but it is an accepted fact that charges made by a ministerial body do not have to be in the same form for exactness and definiteness as do the pleadings in a court of law or equity. The appellant was charged with prescribing and administering certain drugs, and if these, or any of them, are found by substantial evidence to be drugs, and the statute is not invalid for vagueness, or the delegation of the powers to the Medical Board is not unconstitutional, or their orders ultra vires, then the Board could well find the appellant guilty of the violations of the rules and regulations of the Medical Board and also §1275 GC, for the reason that the appellant would have been acting contrary to the rules and regulations of the Medical Board and also acting grossly immorally under the statutes of Ohio, which term, to this Court, means wilfully unjust in his limited practice of medicine or surgery.

The principal questions for the Court's consideration are as follows:

1. Are the pertinent rules and regulations of the State Board of Medicine invalid, ultra vires or unconstitutional?

2. Are the §§1274-1 and 1274-3 GC invalid for indefiniteness, uncertainty and ambiguity?

3. May the appellant, a duly licensed mechanotherapist, prescribe or administer in the performance of minor surgery any or all of the following: sulphathiazole ointment, metycaine, nupercainal, quinocaine or otozole, and in his limited practice may he prescribe or administer vitamins or liver extract?

The pertinent sections of the Ohio State statutes, or parts thereof, that must be considered in a perusal of this case are as follows:

Sec. 1274-1 GC provides in part that:

"The state medical board shall examine and register persons desiring to practice any limited branch or branches of medicine or surgery, and shall establish rules and regulations governing such limited practice. Such limited practice shall include mechanotherapy."

Sec. 1274-3 GC at the time this case came into being, provided in part:

"If the applicant passes such examination and upon payment of a fee, the state medical board shall issue its certificate to that effect. Such certificate shall authorize the holder thereof to practice such limited branch or branches of medicine or surgery as may be specified therein, **but shall not permit him to practice any other branch or branches of medicine or surgery, nor shall it permit him to treat infectious, contagious or venereal diseases, nor to prescribe or administer drugs, or to perform major surgery.**" (Emphasis by the court.)

Sec. 1274-6 GC:

"The provisions of §§1268, 1269 and 1274 to 1281, both inclusive, GC, shall in all respects, in so far as the same may be applicable, govern the state medical board, all of the officers mentioned therein, and the applicants for and recipients of such limited certificates; provided, however, that in addition to the power of the board to revoke and suspend certificates provided for in §1275 GC **it may also revoke or suspend the certificate of any one to whom a limited certificate has been issued upon proof of violation of the rules or regulations established by the board governing such limited practice.**"

Sec. 1295 GC:

"The secretary of the state medical board shall enforce the provisions of law relating to the practice of medicine or surgery * * *"

ARE THE PERTINENT RULES AND REGULATIONS OF

THE STATE MEDICAL BOARD INVALID AND ULTRA VIRES OR UNCONSTITUTIONAL?

This question was asked and an attempt made to answer it in the appellant's brief wherein he cites numerous cases, all of which are untenable because in his cited cases the inherent police power was not present, while in this case it is.

**102 Oh St 305, William v. Scudder:**

"The dimensions of the police power of the state are the dimensions of the public need, save only such exceptions as are imposed by our written constitution."

**37 O L R 672:**

"It has been uniformly held that there is no unlawful delegation of legislative power by vesting such board with the power to make rules and regulations."

42 New York Supplement, section 379, In Re Deyo's Estate:

"Regulations of the secretary of treasury governing registration of United States government bonds with authority conferred upon the secretary by Congress have the force and effect of Federal law."

41 American Jurisprudence 174:

"It is within the police power of the state to delegate to some board or tribunal which it has empowered to grant licenses the power to revoke them and vest such tribunal with the power to investigate and try charges for the revocation of a license, such delegation is consistent with the constitutional guaranty of due process of law."

272 U. S. 581, Lambert v. Yellowlyn:

"There is no right to practice medicine which is not subordinate to the police powers of the state."

The right to practice limited or unlimited branches of medicine or surgery is not an inherent or God-given right, nor is it a right once obtained that is perpetual. It is a right given to some one who, because of his training, education and experience, has been found to have the qualifications.

to perform in his respective field, subject, however, to the laws and rules and regulations governing that right. When one is given a license to practice in a limited branch of medicine or surgery, that one impliedly agrees to conform to and abide by the laws, rules and regulations prescribed for his particular branch of medicine or surgery, the nonperformance of which will result in disciplinary measures such as suspension or revocation of license.

**State ex rel Copeland v. The Medical Board, 107 Oh St 20:**

"In considering this question it must be borne in mind that the state medical board has a most important function imposed upon it, that of safeguarding the public against the ministrations of those who are not qualified by proper training, education and experience to minister to those affected by functional or organic diseases or are the unfortunate victims of accidents.

"If any determination of fact is necessary it must necessarily be made by the state medical board, and for this purpose the board must be held to have such implied powers as are necessary to carry into effect the express powers and duties enjoined upon it by virtue of the above quoted statutes and other related statutes."

**102 Oh St 315, William v. Scudder:**

"The act of the general assembly further regulating the practice of medicine and surgery by authorizing examination and registration of practitioners in the limited branches thereof is a constitutional and valid exercise of Legislative power."

**17 Oh Ap 210, Meeker v. Scudder:**

"Sec. 1274-1 to §1274-7 GC regulating the practice of limited branches of medicine and surgery are valid and constitutional."

119 Connecticut 667, Sage-Allen Co. v. Wheeler:

"In the furtherance of the general purpose to regulate in the public interest the practice of optometry and to carry out the details of its plan of regulation, the legislature may properly vest an administrative board with the power to make regulations reasonably adapted to insure the competency of the optometrists and to prevent conduct on their part which would tend to harm the public.'

**134 Oh St 122, Thompson v. City of Marion:**

"As a general rule, a law which confers discretion on an executive officer or board without establishing any standards for guidance is a delegation of legislative power and unconstitutional."

**132 Oh St 271, Matz v. Curtis Cartage Co:**

"It is the general rule that in order to confer the power to make rules and regulations upon a commission the legislature must establish the policy of the law by adopting standards as have been heretofore stated with reference to conferring official discretion. The discretion conferred must not be unconfined or vagrant but must be canalized within banks that keep it from overflowing."

Counsel for the appellant contends that §1274-1 GC, which states that the Medical Board shall establish rules and regulations governing such limited practice, shall rightly be construed to mean that the board shall have the right to establish rules and regulations for the administration rather than enlarging or restricting the statutory laws.

"Govern" means to regulate by authority.

Did the Board in this instance enlarge or restrict the statutory laws? What do we find in this case?

It is to be noted that the last paragraph in §1274-3 GC and the rules and regulations of the State Medical Board are practically the same. They both set out a prohibition therein whereby limited practitioners cannot use drugs or practice major surgery, so that by reading the intention of the legislature into the rules and regulations of the State Board it makes it a violation for using drugs, and is such a violation that the practitioners license could be revoked, and it is not conferring a vagrant or unconfined discretion upon the State Medical Board for the legislature has established a standard of practice and canalized that Board's discretion.

The right given by the legislature by statute to the Medical Board was a right that was a proper grant under the exercise of police powers, and such as is a constitutional investment, and the rules and regulations pertaining to the instant case are valid and not ultra vires.

ARE §§1274-1 and 1274-3 GC INVALID FOR INDEFINITENESS, UNCERTAINTY AND AMBIGUITY?

The appellant claims that since the term "drug" is not defined in the statute or in the rules and regulations the term then becomes vague, indefinite, uncertain and ambiguous.

It is the contention of the appellant that the evidence clearly indicates that a great uncertainty exists even in the minds of medical men, and then proceeded to quote the testimony of Dietrich, who is the inspector for the Medical Board, but he is not qualified to speak on the subject of drugs since he is not a doctor, pharmacist or a chemist. In this instance Dietrich was expressing a personal opinion as an investigator, and the Court does not consider this testimony effective as the questions propounded to him, in fact, are such as would make him interpret the rights of a mechanotherapist under the law, which province is not his.

It is true that Dr. Platter, the secretary of the Medical Board, testified that a chiropodist under the rules and regulations of the Board prior to the amendment of §1274-3 GC, was permitted to use drugs in his limited practice, however, the Court is not passing upon the right that they had at that time, whether it was under the proper exercise of police power or whether the Board arbitrarily discriminated against the other branches of limited practitioners—that question is not before the Court. So regardless of an added right that the chiropodist formerly had under the rules and regulations of the Board, the rights of Botkin would not be decreased or increased.

The term "drug" is defined under the pharmacy laws of this state. **Sec. 1296-1, paragraph 2, GC,** is as follows:

"The term 'drug' or 'pharmaceutical preparation' means (a) articles recognized in the official United States Pharmacopoeia, or official National Formulary, or any supplement to either of them, intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or animals; and (b) all other articles intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or other animals; and (c) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (d) articles intended for use as a component or any articles specified in clause (a), (b), or (c); but does not include devices or their components, parts or accessories."

The term "drug," as this Court views it, cannot have a different and varying definition under the heading of Pharmacy Laws than it would have under the Medical Board laws. One works in conjunction with the other, as the druggist supplies the doctor, and the definition of the term "drug" should be compatible one with the other.

The Court is not obligated to read only the sections of the statute that are contained under a separate heading and to

reconcile them alone, but all statutes incident to and which have any bearing on a question should be read together and interpreted in the light of common understanding and reason. So while the Medical Practice Act does not have the term "drug" defined, neither do we find a definition for it under the rules and regulations of the State Medical Board, the Court does have the right to accept and should recognize the definition of that term under the Pharmacy Laws of this state, as that section is in pari materia with the provisions of the Medical Practice Act, and legislation is presumed to be consistent and harmonious in the enactment of these laws.

Assuming for the purpose of argument that there was no definition of the word "drug" appearing in the statutes of Ohio or in the rules and regulations of the State Board, the Court must look then to the common conception and meaning of that word as it is understood in the profession in which that word is commonly and professionally used.

Dr. Sollman, a professor emeritus of Western Reserve University and a man recognized as one well qualified to speak in medical circles, defines drug as "a substance that is used in the treatment or prevention or diagnosis of disease." This definition is of substantial clarity that no confusion could result, nor is that definition unlike the definition contained in the statute under the Pharmacy section.

The Court, therefore, cannot agree with the appellant that §1274-1 and §1274-3 GC are invalid for indefiniteness, uncertainty or ambiguity.

MAY THE APPELLANT, A DULY LICENSED MECHANOTHERAPIST, USE ANY OF THE FOLLOWING REMEDIES IN THE PERFORMANCE OF MINOR SURGERY: SULPHATHIAZOLE OINTMENT, METYCAINE, NUPERCAINAL, QUINOCAINE OR OTOZOLE, AND MAY HE PRESCRIBE OR ADMINISTER VITAMINS OR LIVER EXTRACT?

The fact that the appellant is charged with administering or prescribing all of the above styled items does not make it necessary that all such facts be established. Were the fact established by evidence that he administered one or prescribed one of the above remedies, and that that one item was a drug, the charge against the appellant would be sufficiently proved.

It must be remembered that the appellant did not take the stand to deny the fact that he told Dietrich that he had administered or prescribed all of these items to his patients, and therefore that fact, standing unrebutted, the Referee and the Board had the right to accept this testimony of Dietrich's as the truth.

Were these remedies or materials "drugs" such as were

intended by the legislature and the Medical Board?

Dr. Sollman testified unequivocally that sulphathiazole ointment, metycaine, liver extract and thiamine chloride were drugs but that the other substances were not known to him. His testimony, as the Court has already indicated, was not rebutted.

At first blush to say that a limited practitioner of medicine or surgery should not be allowed to prescribe or administer vitamins or liver extract for a physical deficiency seems rather farcical, for immediately one realizes that these items can be purchased generally without prescription. Upon meditation, however, one must necessarily conclude that this prohibition is not an absurdity, for some one in whom you place your future health and in whom you put your trust should be a person who is qualified to speak, to comprehend the nature of your deficiency and to know the necessary prescription therefor. Since Botkin is a limited practitioner it is presumed that he is not qualified or versed in the use of vitamins or liver extract, even though he may well be. However, the line must be drawn somewhere, and the legislature has seen fit, from the standpoint of public safety, to say by legislation that practitioners of mechanotherapy shall not administer or prescribe drugs, regardless of their knowledge. And since the Court concludes that vitamins and liver extract are drugs, such then cannot be prescribed or administered by limited practitioners.

United States v. Forty-eight Dozen Packages, 94 Federal, section 46:

"A gauze bandage intended for use in the cure, prevention and medication of disease is a drug under the Pure Food and Drugs Act defining drug as including all medicines and preparations recognized by the United States Pharmacopoeia or National Formulary for internal or external use, and any substance or mixture of substances intended to be used for the cure, mitigation or prevention of disease in either man or other animal."

In 33 W. C. Q. B. R. 537 it was held that even peppermint lozenges came prima facie within the term of drugs. (This is a Canadian case.)

By statute §1274 GC osteopaths were given the express authority to use anesthetics and antiseptics, and §1274-3 GC as amended gave chiropodists the right to use such drugs as are necessary to such practice as are set out in the rules and regulations of the State Board. Thus, if by implication one would say that the mechanotherapist had the right

to use drugs to perform minor surgery, that thought is definitely expelled by making an exception by giving osteopaths and chiropodists that right, but no others of the limited practice.

31 Federal Supplement 206, Georgia Association of Osteopaths v. Allen:

"An implied authority cannot prevail over an express prohibition."

The appellant suggests that since his practice was limited only by the prohibition not to prescribe or administer drugs or perform major surgery he could, therefore, perform operations for all minor surgery.

To perform various types of minor surgery it was testified that local anesthetics and antiseptics were a necessary adjunct to successful operations, and therefore Botkin concluded that since he is entitled by implication to perform minor surgery, and a necessary adjunct to some cases of minor surgery is local anesthetics and local antiseptics, he therefore by law is permitted to use them in his limited practice.

State v. Jones, 164 Southeastern 2nd, 85:

"In prosecution of chiropractor for unlimited practice of medicine defendant was not entitled to instruction to acquit if medicine furnished by defendant to complaining witnesses were such as are generally used by the public without prescription, dispensation and administration by persons licensed to practice medicine and surgery."

Bartley v. United States, 264 Federal 79:

"Where a claimant shipped mineral water in interstate commerce under label representing that it possessed curative and alleviating qualities he could not deny that it was a drug within the meaning of the Food and Drug Act."

Sec. 1274-3 GC provides in part that:

"Such certificate shall authorize the holder thereof to practice such limited branch or branches of medicine or surgery as may be specified therein, but shall not permit him to practice any other branch or branches of medicine or surgery."

What then can the appellant herein do by way of minor surgery?

He is a mechanotherapist, and mechanotherapy is defined in the rules and regulations of the State Medical Board as being the use of manual, physical or mechanical measures for the treatment of disease, but such physical or mechanical measures shall not include the use of X-ray or radium for therapeutic purposes. That definition in itself sets out just how far the appellant can go in his practice.

170 Washington 354, State v. Lydon. The defendant because of right to practice mechanotherapy claimed to have the right to practice surgery. The Court said:

"These terms mean simply a remedial treatment consisting of manipulation in part, or the whole of the body, with the hand or by mechanical means. In plain English they mean massage, manually or mechanically performed. They certainly do not include the practice of surgery in any form."

In the Medical Dictionary for Lawyers we find mechanotherapy defined:

"(Gr. Mechane, machine—therapeia treatment.) The treatment of disease by mechanical means as by movements produced by special machines."

State v. Gleason 148, Kansas 1:

"Osteopathic physicians are entitled to perform surgery under the provisions of the osteopathic statute, if the surgery is confined to surgery as it was taught and used as a part of the osteopathic system of healing, which in the main was by manipulation, but are not entitled to enter into the general field of operative surgery with surgical instruments."

It impresses the Court that the mechanotherapist, under the right by implication given by statute, is allowed to practice minor surgery, but must be such as is accomplished by massage or other similar means, either manually or mechanically, and he can go no further.

Legislative enactments must be so construed as not to present an absurdity.

Can a court conscientiously say that while the legislature by fiat has prohibited limited practitioners the right to prescribe or administer drugs, but since they might practice some minor surgery that therefore the legislature, even though it has spoken clearly, did not mean what it said and that drugs can be used, since in some instances they are con-

sidered a necessary adjunct to minor surgery? This Court believes that such a pronouncement would be unconscionable and erroneous, and it would be establishing a right by implication in the face of expressed legislative restriction and prohibition.

**Farrand v. Medical Board, 151 Oh St 222:**

"The word 'appeal' as used in §154-73 GC means the proceeding whereby a court reviews the action or decision of an administrative agency and confirms, reverses, vacates or modifies an order of the agency complained of in the appeal. The court may not substitute its judgment for that of the agency but is confined to determining the right of the parties in accordance with the statutes and other law applicable."

4 Northeastern 2nd 602:

"Where a ministerial board conforms to the statutory procedural methods in granting or revoking a license and its decision is supported by substantial evidence, its finding and determination will not be disturbed."

Botkin is presumed to have known the law and, therefore, the limits of' his practice as a mechanotherapist, and if he were dissatisfied with these limits he should have qualified for an unlimited practice, but as long as he has only a limited license he cannot transgress in to the field of unlimited practice.

The unlimited medical profession guard zealously their legal rights against the trespass and encroachment of others, and rightfully so, for they sacrificed many years of their lives in qualifying for this very highly skilled profession and if that right were not guarded by law or the profession, the health and welfare of the people of Ohio would be constantly in jeopardy.

Here we are dealing with the very lives of people, generally treasured above all things, and the legislature, by its exercise of police power, has the right to adopt precautionary measures governing the practice of medicine and surgery to the end that, in so far as humanly possible, the lives and health of the citizens of this state will be given the greatest possible safeguard.

It is therefore the conclusion of this Court that a licensed mechanotherapist must not prescribe or administer drugs of any kind in performing minor surgery; that minor surgery which he is permitted to perform must be an operation within the limits of mechanotherapy; and that vitamins and liver

extract, as well as sulphathiazole ointment and metycaine, are drugs within the meaning of the statutes of the State of Ohio; and that the order of the State Medical Board is supported by sufficient evidence and is not contrary to law; and that the rules and regulations of the State Medical Board of Ohio pertinent to the within action are not invalid or repugnant to the provisions of the constitution of Ohio and are not contrary to the laws of this state, and that the statutes drawn in question in this action are not invalid for indefiniteness, ambiguity or uncertainty and are not repugnant to the provisions of the Ohio constitution and the laws of the State of Ohio.

This Court therefore finds that the appeal is not well taken and affirms the judgment of the State Medical Board in toto.