## ADOLPH COORS CO. v. LIQUOR CONTROL COMMISSION et al.

No. 6245. Decided September 5, 1940. (105 P. 2d 181.)

*Ira A. Huggins,* of Ogden, and *Paul H. Ray,* of Salt Lake City, for plaintiff.

*Parnell Black, George H. Lunt,* and *D. Howe Moffat,* all of Salt Lake City, for defendants.

*J. A. Howell,* of Ogden, and *Harley W. Gustin,* of Salt Lake City, amici curiae.

PRATT, Justice.

Adolph Coors Company, a foreign corporation, authorized to do business in this state has petitioned for a writ of prohibition. It seeks to prevent the Utah Liquor Commission from enforcing its Regulation No. 20 against the corporation. The applicable part of that regulation reads (Section 1 (b) :

(b) No brewer, dealer or wholesaler shall adopt or use in the State of Utah any container for beer differing in size from the following:

| | | | | |
|---|---|---|---|---|
| 11 oz. of beer | | | whole barrels |
| 12 " " " | | | half barrels |
| 22 " " " | | | quarter " |
| 24 " " " | | | eighth " |
| 32 " " " | | | |
| 64 " " " | | | |

The corporation desires to sell its beer in 8 ounce bottles. It contends the Commission has no power to enact the quoted regulation. The Commission threatens criminal prosecution if the corporation enters into such sales. The Commission has demurred to the Coors Company petition. Under Sections 114 and 150 of the Liquor Control Act, Laws 1935, c. 43, the corporation may be prosecuted for selling

any alcoholic beverage contrary to the provisions of the act or of the regulations. If convicted, the punishment is a fine of $1,000 and forfeiture of its license (sec. 161) if the fine is not paid. The definition of alcoholic beverages includes beer. Section 7 authorizes the Commission to make such regulations not inconsistent' with the act as it may deem necessary for carrying out the provisions thereof and for its efficient administration; and provides that those regulations shall have the same force as if they formed a part of the act. Section 83 provides that beer may be sold in this state in the manner and under the conditions prescribed in the act or in the regulations, and not otherwise. Section 6 (e) provides that subject to the provisions of the act, the Commission shall control the sale and delivery of alcoholic beverages in accordance with the provisions of the act and the regulations. Section 3 defines regulations as regulations made by the Commission.

It is quite apparent from these sections that no distinction exists between a violation of a section of the act and a violation of a Commission regulation, so far as subjecting the violator to prosecution is concerned.

A very important provision of the Act so far as this case is concerned is this:

"Section 96. * * * It shall be unlawful for any person to * * * sell * * * bottled beer in containers of a capacity of more than sixty-four fluid ounces * * *."

In *Bird & Jex Co.* v. *Funk,* 96 Utah 450, 85 P. 2d 831, 835, this court said:

"* * * In the exercise of the rule-making power, the Commission must be guided by the intent and purpose of the legislature as found by a reading and interpretation of the whole act and every part thereof."

This court said further:

"Where the legislature delegates to an administrative agency power to make rules and regulations, such delegation must be accompanied by a declared policy outlining the field within which such rules and regulations may be adopted. * * *."

The field of regulation as to volume of each container is fixed by the quoted part of section 96—all sizes of containers up to and including 64 fluid ounces are lawful sizes. The legislature has not said that the Commission may determine what sizes shall be lawful and what sizes unlawful. The legislature has said the Commission may regulate the sale of beer which the legislature has authorized to be sold; it has not said that the Commission may prohibit that which the legislature has authorized to be done. This might be illustrated by an assumed case of an attempt upon the part of the Commission to say that a sale of beer in 64 ounce containers is prohibited. There we would have a direct conflict between the legislative enactment and the Commission's regulation. If the Commission can not say that a 64 ounce container shall be prohibited, it can not say an 8 ounce container shall be prohibited.

It should be kept in mind that the legislature has provided that the Commission's regulations shall not be inconsistent with the provisions of the act (Section 7). It should be kept in mind that the regulations are as binding as the sections of the act. The legislature did not intend, however, delegating its powers to the Commission. It gave the Commission power only within the limitation fixed by itself.

In the brief of the Commission is found the suggestion that 8 ounce bottles might be pawned off upon the public as 11 ounce bottles. This suggests to the mind of the writer an illustration of the difference between regulating and prohibiting the sale of beer within the limit of container size fixed by the Legislature. To require that each container be labeled as to its capacity would be an example of regulating within the limits fixed by the legislature.

Section 2 of the act reads (L. 35, c. 43, p. 57) ;

"This act shall be deemed an exercise of the police powers of the state for the protection of the public health, peace and morals; to prevent the recurrence of abuses associated with saloons; to eliminate the evils of unlicensed and unlawful manufacture, selling and disposing of alcoholic beverages; and all provisions of this act shall be liberally construed for the attainment of these purposes."

Regulations enacted for the purpose of carrying out the provisions of the act and for its efficient administration should not be adopted without regard to the purpose as given by Section 2. If the sale of 64 ounces of beer is not detrimental to the health, peace and morals of the citizens of the state, it is hard to see why the sale of any given quantity less than 64 ounces is detrimental. Though there may be some administrative advantage to the Commission in eliminating 8 ounce containers, that advantage must be waived, if, to get it, a regulation must be passed inconsistent with the sections of the act.

What about an interpretation of the 64 ounce limitation as follows: Containers larger than that must be unlawful, containers of that size or smaller may, if the Commission so rules, be unlawful? This would place in the hands of the Commission the power to prohibit the sale of beer in any size container. The legislature has said that the sale of beer is a lawful enterprise. The Commission under such an interpretation could for all practical purposes make it unlawful. The legislature did not intend to give any such power to the Commission. The sale of beer in this state is a legitimate private enterprise—the sale of liquor is not, as the latter is limited to state sales. By section 6 (i) it is provided that the Commission may determine the nature, form and capacity of all packages to be used for containing liquor kept or sold under this act. No such provision was made as to beer—why not? Simply because the legislature did not intend that the Commission should have such power where the enterprise was a private one.

We are of the opinion that the quoted part of Regulation No. 20 is invalid; and that any act of the Commission pursuant to it is void and not within its delegated powers. ■

Should prohibition lie in this case? In a recent case of *Allen* v. *Lindbeck,* 97 Utah 471, 93 P. 2d 920, 925 ■ we held:

"The rule usually applied is that even though an inferior court or tribunal is threatening to act without or in excess of jurisdiction prohibition is not available unless it be also shown that there is no 'plain, speedy and adequate remedy in the ordinary course of law,'" citing authorities.

We also said:

"But these cases establish that under our statutes this court may, in the exercise of a sound judicial discretion, grant the writ even where there is an adequate remedy in the ordinary course of law."

We emphasized in that case the fact that the procedure was in the nature of a criminal proceedings, and thus compelling petitioner to rely upon his remedy of appeal would foster further quasi criminal litigation. It would seem that the principles of the Allen v. Lindbeck case are applicable here.

The corporation here, if forced to its remedy by appeal, must enter upon a course of conduct which will subject it to criminal prosecution throughout the state, subject it to fines, if convicted, and to a possible forfeiture of its license, if it fails to pay the fines (sections 114, ■ 150 and 161). Should a forfeiture occur it would mean the loss of the right to make sales held lawful by the Commission as well as those held illegal. Under such circumstances we feel that to force the case through the ordinary channels of procedure would be an injustice.

The alternative writ should be, and is hereby made permanent.

MOFFAT, J., concurs.

WOLFE, Justice (concurring in part, dissenting in part).

I concur in the holding that we should entertain the application for the writ of prohibition. This case furnishes a border line illustration. From an examination of a number of cases in which we have considered applications for writs of prohibition, I think the court's viewpoint and rulings can be stated thus: (1) Even though there is a lack or an excess of jurisdiction we will not grant the permanent writ if there is a plain, speedy and adequate remedy in the ordinary course of the law, except that in doubtful cases where the stay will cause only delay without jeopardizing rights the temporary writ may be issued in order to give opportunity for better presentation and consideration of doubtful questions. (2) If there is a lack or an excess of jurisdiction and the party has no other remedy, the temporary and permanent writs should be granted as a matter of right. (3) If there is neither lack nor excess of jurisdiction and there is a plain, speedy and adequate remedy in the ordinary course of the law, we will not grant either the temporary or permanent writ, but in doubtful cases where the stay will cause only delay without jeopardizing rights, the temporary writ may be issued in order to give opportunity for better presentation and consideration of such doubtful questions. (4) If there is neither lack nor excess of jurisdiction but there is plain, speedy or adequate remedy in the ordinary course of the law, we will ordinarily grant the permanent writ. If the latter is the claimed situation on application for a temporary writ we will refuse or grant that writ depending on fair probability as it appears from the record that the permanent writ will be granted if the situation turns out at the hearing for a permanent writ, as contended for by the applicant. The phrase "plain, speedy and adequate remedy in the ordinary course of law," takes in more than procedural adequacy. If, as said in *Atwood* v. *Cox*, 88 Utah 437, 55 P. 2d 377, the situation was such that if the writ

did not issue, the applicant could not by the ordinary course of law even though he prevailed substantially retrieve himself from the predicament in which the threatened action of the court or agency would place him, we would grant the writ even though there was no excess or lack of jurisdiction. But in order not to multiply applications for these extraordinary writs this court will consider carefully whether such claimed inability of the party to be retrieved by the ordinary course of law in fact exists, and it is in regard to that factor that our discretion will be exercised.

It is to be admitted that this appears to extend the province of the writ beyond the scope of Sec. 104-69-2, R. S. U. 1933. But under Sec. 4, Art. VIII of our Constitution, this court has "power to issue writs necessary and proper for the exercise of" its appellate jurisdiction. Under the case of *Attorney General* v. *Pomeroy*, 93 Utah 426, 73 P. 2d 1277, at pages 1287-1289, we are not limited in jurisdiction to appeals only from final judgments. Hence, we can, if we so desire, entertain an appeal from an interlocutory order. The use of the so-called writ of prohibition in matters not involving jurisdiction in effect means that we are issuing a different type of writ under that name in order to examine proceedings of a lower court, or to consider the propriety of a proceeding which it is claimed such court is about to take improperly and which it is further claimed would, if effectuated, place the party in a situation from which he could not be retrieved. The writ might be given a different name such as a writ of supervisory jurisdiction, so that it would not be confused with the true writ of prohibition since it is in effect a review of the conduct of a proceeding up to a point not final, but whether done under the name of a writ of prohibition or under some other name, it should be sparingly used.

But in the instant case we are confronted by a situation where the question of lack of jurisdiction is presented because, if the Liquor Commission has no power to make the

regulation complained of, it has no power to enforce it. We are, therefore, confronted at the threshold only with the question as to whether there was a plain, speedy and adequate remedy in the ordinary course of the law. I can agree with the main opinion that the situation here is one in which, as far as that factor is concerned, a writ properly could be issued. The applicant here is somewhat in the same position as an official who, by virtue of a conviction, automatically is removed from office. He should not in such case be required to accept the consequences of a conviction, even though a successful appeal and final successful termination might have the effect of reinstating him. Here too, the penalties of conviction are such that he suffers an irretrievable loss, even if eventually successful.

But I cannot concur in the part of the opinion which holds that the Liquor Commission did not have jurisdiction to regulate the size and capacity of beer containers. Whether it had the right to prohibit 8 ounce bottles or containers is another question, depending upon whether such regulation was without reasonable basis and was therefore arbitrary.

The Liquor Control Act divided alcoholic beverages into two classes: (1) malt beverages containing not less than one-half of 1 per cent nor more than 3.2 per cent by volume of alcohol, which were called "light beers" and (2) "liquors" which are beverages other than "light beer" which contain more than one-half of 1 per cent by volume of alcohol. As to the second class the legislature placed in the law certain regulations which the Commission was bound to follow. As to "light beers," it gave the Commission greater latitude in the regulation of their traffic and sale. The reason for this is apparent. "Liquors" are the more harmful. The Legislature not only made the State, through the Liquor Commission, the sole dispenser of "liquors" to consumers, but placed in the law definite limits on the Commission's power to regulate by itself placing many restrictions in the law. But as to "light beers" it left regulation more

largely to the Commission. Erroneous is the idea that the Legislature gave the Liquor Commission very limited powers to regulate the disposition and sale of "light beers." It recognized the sale of beer as a legitimate private enterprise. But, while it permitted the manufacture and sale of "light beers" to be conducted as a business, for that very reason it granted to the Commission wide powers of regulation—in fact, any "regulations, not inconsistent with this act, as it may deem necessary for carrying out the provisions thereof and for its efficient administration." (Sec. 7.) While the Act fastened certain definite restrictions on the sale of hard liquors, not the least of which was the disposition of the same by the State itself, in the matter of the sale and traffic of beers it left a wider area in which the Commission could regulate. This was to make that part of the Act more flexible so as to articulate with private venture and because the Legislature was willing to grant the Commission wider powers there to regulate than in the field of hard liquors. From the fact that the Legislature gave the Liquor Commission specific power to regulate the nature, form and capacity of all packages to be used for containing liquor kept or sold under the Act, to deduce that the Legislature did not intend the Commission to have such power in reference to "light beer" involves a complete non sequitur. Where is there any connection? How may one proposition be deduced from the other? Why is it not equally valid the deduction that the grant to the Commission to regulate the nature, form and capacity of packages containing hard liquor came from a desire to make definite such power because of other rigid statutory restrictions on the Commission's power in regard to hard liquors, and that such grant can, therefore, give rise to no implication that it did not desire the Commission to regulate the nature, form and capacity of beer containers. Knowing that it had given the Commission plenary powers to regulate the traffic in beer not inconsistent with the Act, the Legislature felt no necessity to grant specifically the power to determine the

nature, form and capacity of beer containers. If we are to indulge in guesses as to the intention of the Legislature, one guess is as good as the other, since no deduction as to the Commission's lack of power over beer regulations should be made from the giving of specific powers to regulate hard liquors. The only real legitimate basis for our decision is to take the statute as it reads and give it effect. Sec. 7 reads, in part:

"The commission may, from time to time, make such resolutions, orders and regulations, not inconsistent with this act, as it may deem necessary for carrying out the provisions thereof and for its efficient administration."

The regulation which the Commission promulgated in regard to sizes of beer containers is not inconsistent with the Act and, therefore, must be valid unless arbitrary. The argument that it is inconsistent with Sec. 96 or that such section, by implication, makes it lawful to sell in any container under sixty-four fluid ounces should stand refuted by a mere recitation of that part of Sec. 96 dealing with this subject.

"It shall be unlawful for any person to keep, sell, or otherwise dispose of any bottled beer in containers of a capacity of more than sixty-four fluid ounces, and shall be sold only in the original containers."

This language plainly sets a maximum container for bottled beer.

In the case involving Art. 6, Secs. 139, 140 of the Act, the writer was of the opinion that we had just the reverse of the case here presented. In the case of *Bird & Jex Co.,* v. *Funk (Liquor Control Commission of Utah)*, 96 Utah 450, 85 P. 2d 831, the writer dissented because he thought the language of that law carved out from a strict statutory prohibition against advertising alcoholic beverages, the right of the Commission to permit, under regulation, advertisement of "light beer."

The court in this case apparently carves out of a right to regulate in any way not inconsistent with the Act, a prohibition on such regulation in the case of fixing the nature, form and capacity of "light beer" containers. In my opinion, the court in both cases has adopted a construction completely opposite to the legislative intention. Moreover, the constructions are inconsistent with each other. In the Bird & Jex case this court refused to construe the language of the statute to exempt from a strict prohibition against all advertising a certain type of advertising of "light beer," to wit: billboard advertising, although the proviso clause seemed to permit all advertising, under regulation, of "light beers." In this case the main opinion does just the reverse. It, by a supposed implication which I do not think is tenable, and not by express language as in the Bird & Jex case, now exempts from an express power to regulate fully all traffic in "light beers" not inconsistent with the Act, a power to regulate as to nature, form and capacity of containers. Thus, in one case, we construed the Act so as to give the Commission power to prohibit in reference to a matter which the Statute apparently gave it power only to regulate, whilst in this case we deny the Commission power to regulate in reference to a matter in regard to which the statute apparently gave it such power.

Under the prevailing opinion any sized container under 64 ounces may be marketed. This may introduce great difficulties in the law's administration by multiplying the number of bottles or small containers for which the inspectors must be on the watch.

If the classification now adopted by the Commission is arbitrary and has no real basis in fact, such should in some way be shown. It may very well be that the plaintiff herein could show that the failure of the Commission to include an 8 ounce bottle or container in its list of approved sizes was arbitrary. At this time I cannot say that the part of Regulation No. 20 which is before us is arbitrary, nor can

I say that the Liquor Commission did not have power to standardize and fix sizes and capacities of beer sold to the consumer.

McDONOUGH, Justice.

I concur in the views expressed by Mr. Justice Wolfe in his opinion.

LARSON, Justice (concurring in part, dissenting in part).

I concur in that part of the opinion holding that as Section 6 of the Act grants to the Liquor Control Commission the power to determine the nature, form and capacity of all packages to be used for containing liquor kept or sold under the Act, it must be held to be a denial of the power to control the capacity, nature of form of the packages used for beer. I also agree that prohibition will lie in a case such as this.

I do not concur in the proposition that because Section 96 of the Act prohibits containers for beer of a capacity of more than 64 fluid ounces that prohibits the Commission from making regulations as to using any sizes smaller than 64 ounces. But since the Commission is denied the power by the provisions of Section 6, the effect of Section 96 is immaterial except to record my disagreement with what is said in that part of the opinion.