PEOPLE *v.* BABCOCK.

1. LICENSES—ARCHITECTS, PROFESSIONAL ENGINEERS, LAND SUR-
   VEYORS—INTENT OF STATUTE.
   The legislative intent in enacting the act licensing and regulating
      architects, professional engineers and land surveyors was to
      safeguard life, health, and property, when it restricts the de-
      signing and construction of a building to qualified persons,
      both as to education and experience (CL 1948, § 338.551).

2. SAME—ARCHITECTS, PROFESSIONAL ENGINEERS, LAND SURVEYORS—
   SEGREGATION OF PRACTITIONERS.
   The statute licensing and regulating the practice of architecture,
      professional engineering and land surveying intended to seg-
      regate the practitioners into 3 distinguishable categories and
      that the applicants have certain and definite qualifications
      before they are entitled to take an examination in either of
      the professions, which examinations are to be given separately
      (CL 1948, §§ 338.551, 338.562, 338.564, 338.565; CLS 1954,
      § 338.552).

3. STATUTES—PURPOSE OF INTERPRETATION—INTENT.
   The primary rule governing the interpretation of statutes is to
      give effect to the intention of the legislature.

4. SAME—CONSTRUCTION OF UNAMBIGUOUS LANGUAGE—INTENT.
   A bare reading suffices and no interpretation is necessary to
      determine the intent of a statute containing language that
      is plain, certain and unambiguous.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  33 Am Jur, Licenses § 17.
[3]  50 Am Jur, Statutes §§ 223, 224.
[4]  50 Am Jur, Statutes § 225.
[5]  50 Am Jur, Statutes §§ 247, 363.
[6]  50 Am Jur, Statutes § 357.
[7]  11 Am Jur, Constitutional Law § 214 *et seq.*
     42 Am Jur, Public Administrative Law §§ 26, **43.**
[8]  42 Am Jur, Public Administrative Law § 45.
[11] 3 Am Jur, Architects § 3.
     33 Am Jur, Licenses §§ 20–24.

5. SAME—CONSTRUCTION—ENTIRE ACT READ.

Effect must be given, if possible, to every word, sentence and section of an act and to that end, the entire act must be read and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole.

6. SAME—CONSTITUTIONALITY.

Courts strive to sustain the validity of an act if that may be done without doing actual violence to the language used in it, every intendment favorable to a conclusion sustaining the law being indulged.

7. ADMINISTRATIVE LAW—STATUTES—POLICE POWER.

The power to carry out a legislative policy enacted into law under the police power may be delegated to an administrative board under general language so long as the exact policy is clearly made apparent but such board may not assume it has been vested with power beyond expressed legislative delegation.

8. SAME—DELEGATION OF LEGISLATIVE POWER.

It is not an objectionable delegation of legislative power to leave details of operation and administration to an administrative board.

9. WORDS AND PHRASES—ARCHITECTS—ENGINEERS.

The statutory definitions of architects and engineers, although similar, are distinct, the services of an architect requiring the application of the principles of architecture or architectural design, while the services of an engineer require the application of engineering principles (CL 1948, § 338.562; CLS 1954, § 338.552).

10. LICENSES—ARCHITECTS, PROFESSIONAL ENGINEERS, LAND SURVEYORS—EQUAL PROTECTION.

The statute licensing and regulating architects, professional engineers and land surveyors does not deny to a registered engineer the equal protection of the law as guaranteed by the Constitutions of the State and the United States because it excludes from its effects architects or engineers working on a temporary basis, not to exceed 60 days, or being engaged in serving the United States, or those operating on interstate or railroad property, such classification being practical and reasonable, therefore, not reviewable (US Const, Am 14; Mich Const 1908, art 5, § 30; CL 1948, § 338.561 et seq., as amended).

11. SAME—ARCHITECTS, ENGINEERS, LAND SURVEYORS—CONSTITU-
TIONAL LAW—DUE PROCESS—EQUAL PROTECTION.

The statute licensing and regulating architects, professional en-
gineers and land surveyors which is designed to safeguard the
life, health and property of the citizens of the State by pro-
viding tests for each applicant, and to provide certificates
to those who meet the qualifications provided by the legis-
lature, is constitutional insofar as the due process and equal
protection clauses of the Constitutions of the State and United
States are concerned (US Const, Am 14; Mich Const 1908,
art 2, § 16; art 5, § 30; CL 1948, § 338.551 et seq.).

12. SAME—ARCHITECTS—ENGINEERS—ADVERTISING.

An engineer who was duly licensed as such by the board of archi-
tects, professional engineers and land surveyors but not licensed
as an architect may not convey the impression that he was an
architect by advertising he was an "architectural engineer and
builder" (CL 1948, § 338.551 et seq.).

Appeal from the Recorder's Court for the City of
Detroit; Murphy (George), J.   Submitted October
13, 1955.   (Docket No. 88, Calendar No. 46,418.)
Decided December 1, 1955.   Rehearing denied March
1, 1956.

Charles W. Babcock was convicted of unlawfully
using title tending to convey the impression that
he was an architect.   Affirmed.

*Thomas M. Kavanagh,* Attorney General, *Edmund
E. Shepherd,* Solicitor General, *Gerald K. O'Brien,*
Prosecuting Attorney, *Samuel Brezner* and *Angelo
A. Pentolino,* Assistant Prosecuting Attorneys, for
plaintiff.

*Leithauser, Leithauser & Tobias,* for defendant.

SHARPE, J.   Defendant, Charles W. Babcock, was
convicted of unlawfully using a title tending to con-
vey the impression that he was an architect in vio-
lation of CL 1948, § 338.551 (Stat Ann 1953 Cum
Supp § 18.84[1]), by advertising in the Detroit

News on January 1, 1954, as "C. W. Babcock, Architectural Engineer and Builder." The record shows that defendant is registered with the State board of registration for architects, professional engineers and land surveyors as a registered professional engineer, and that he is not so registered as an architect.

Defendant's registration certificate as a professional engineer reads as follows:

"State of Michigan, Board of Registration for Architects, Professional Engineers and Land Surveyors.

"Be it known that Charles W. Babcock, having submitted acceptable evidence of his training and other qualifications, has been registered and is hereby authorized to practice professional engineering and use the title '*Registered Professional Engineer.*' The particular fields of engineering practice and experience embraced by the evidence mentioned heretofore, on which the board has based this registration, includes construction.

"In witness of these presents, the board grants this certificate, which shall be effective for 3 years, from February 12, 1946, and for additional periods of 3 years each, when so certified by the board." (Emphasis added.)

Upon leave being granted, defendant appeals and urges that he is not prohibited by the act in question from advertising himself as an architectural engineer, and that the act is unconstitutional for the following reasons:

"It is so vague and indefinite that to convict a defendant under this act would be a denial of due process of law of the 14th Amendment to the Constitution of the United States and/or the due process of law clause of article 2, § 16 of the Constitution of the State of Michigan (1908).

"That said act attempts to delegate legislative authority to an administrative agency without pro-

viding any yardstick for the exercise of its authority contrary to the due process clause of the 14th Amendment to the Constitution of the United States and/or the due process of law clause of article 2, §16 of the Constitution of the State of Michigan (1908)."

Defendant also urges that the act in question is unconstitutional for the further reason that the act is a denial of equal protection of the law as guaranteed under the 14th Amendment of the Constitution of the United States and article 5, § 30, of the Constitution of the State of Michigan (1908) which prohibits special legislation.

Defendant testified:

"We design houses and buildings of all kinds. We also have a construction business, but do very little modernization. We design or construct other than residential buildings. I sell plans and specifications all over the United States through the National Home Plan Bureau, of which I am the owner, through the newspapers in different cities all over the country, such as Cleveland, Denver, and so on, and we had them in the Free Press here for around 5 years, in fact. I draw some of the plans and some of the students draw them under my supervision. The specifications are prepared by me, or by someone under my supervision and control."

It clearly appears that the legislative intent in enacting the act was to safeguard life, health, and property, when it restricts to qualified persons, both as to education and experience, the designing and construction of a building. Section 2 of the act (CLS 1954, § 338.552 [Stat Ann 1953 Cum Supp § 18.84(2)]) reads, in part, as follows:

"The term 'architect' as used in this act shall mean a person who, by reason of his knowledge of mathematics, the physical sciences, and the principles of architectural design, acquired by professional edu-

cation and practical experience is qualified to engage in architectural practice as hereinafter defined.

"The practice of architecture within the meaning and intent of this act includes any professional service such as consultation, investigation, evaluation, planning, design, or responsible supervision of construction, alteration or repair in connection with any public or private structures, buildings, equipment, works or projects wherein the public welfare or the safeguarding of life, health, or property is concerned or involved, when such professional service requires the application of the principles of architecture or architectural design. No registered architect shall be engaged or interested in the sale of building materials or have any interest in any project or structure, prejudicial to his professional interest therein, excepting such projects and structures as are not required by this act to be designed by a registered architect."

The act also defines professional engineer and land surveyor. Section 12 of the act (CL 1948, § 338.562 [Stat Ann 1953 Cum Supp § 18.84(12)]) states the qualifications that applicants must have before taking the examination. In part, it reads as follows:

"An applicant for examination for registration must be a citizen of this State except as provided in section 20; must be of good moral character and over 21 years of age; must, except as provided hereafter in this section, have had not less than 8 years of practical experience in architectural or engineering work, or land surveying, under the direction or supervision of a registered architect or a registered engineer or a registered land surveyor, or of an architect or engineer or surveyor of equivalent professional standing, or must be a graduate in architecture or engineering of a college or school acceptable to the board, and have had not less than 4 years of experience of a nature satisfactory to the board."

Section 14 of the act (CL 1948, § 338.564 [Stat Ann 1953 Cum Supp § 18.84(14)]) provides in part as follows:

"Examinations shall be given for the purpose of determining the qualifications of applicants for registration separately in architecture, in professional engineering, and in land surveying."

Section 15 of the act (CL 1948, § 338.565 [Stat Ann 1953 Cum Supp § 18.84(15)]) provides for a certificate of registration for applicants who, in the opinion of the board, have satisfactorily met the requirements of the act:

"The board shall issue a certificate of registration upon payment of registration fees as provided for in this act, to any applicant who, in the opinion of the board, has satisfactorily met all the requirements of this act. In case of a registered architect, the certificate shall authorize the practice of 'architecture,' in the case of a registered engineer, the certificate shall authorize the practice of 'professional engineering,' and in the case of a registered land surveyor, the certificate shall authorize the practice of 'land surveying.' Certificates of registration shall show the full name of the registrant, shall have a serial number, and shall be signed by the chairman and the secretary of the board under seal of the board.

"The issuance of a certificate of registration by this board shall be evidence that the person named therein is entitled to all the rights and privileges of a registered architect, a registered professional engineer, or of a registered land surveyor, while the said certificate remains unrevoked or unexpired."

It clearly appears from the above statute that the legislature intended that applicants have certain and definite qualifications before they are entitled to take an examination in either of the 3 mentioned professions. Section 1 of the act (CL 1948, § 338.551

[Stat Ann: 1953 Cum Supp § 18.84(1)]) provides, in part: ··

"And it shall be unlawful for any person to practice or to offer to practice the profession of architecture, the profession of engineering or of land surveying, in this State, or to use in connection with his name or otherwise assume, use or advertise any title or description tending to convey the impression that he is an architect, a professional engineer, or a land surveyor, unless such person has been duly registered or exempted under the provisions of this act."

In our opinion it was the intention of the legislature to segregate architects, professional engineers and surveyors into 3 distinguishable categories, as section 14 of the act provides that examinations shall be given separately in architecture, in professional engineering, and in land surveying.

Appellant challenges the constitutionality of the act on the basis that it is vague, indefinite, an unlawful delegation of legislative authority to an administrative agency, and in violation of the 14th Amendment of the Constitution of the United States and article. 5, § 30, of the Constitution of the State of Michigan (1908).

As a guide in determining the constitutionality of an act, we again affirm our holding in *City of Grand Rapids* v. *Crocker*, 219 Mich 178, 182, 183:

"There seems to be no lack of harmony in the rules governing the interpretation of statutes. All are agreed that the primary one is to ascertain and give effect to the intention of the legislature. All others serve but as guides to assist the courts in determining such intent with a greater degree of certainty. If the language employed in a statute is plain, certain and unambiguous, a bare reading suffices and no interpretation is necessary. The rule is no less elementary that effect must be given, if

possible, to every word, sentence and section. To that end, the entire act must be read, and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole.

" 'No rule is better settled than, in construing a statute, effect must be given to every part of it. One part must not be so construed as to render another part nugatory, or of no effect. The same rule applies to words in construing a sentence.' *People* v. *Burns,* 5 Mich 114, 117.

"See, also, *Whipple* v. *Saginaw Circuit Judge,* 26 Mich 342."

In *Attorney General* v. *Detroit United Railway,* 210 Mich 227, 253, 254, this Court said:

"In approaching the consideration of a legislative enactment with the purpose of passing upon its constitutionality courts usually do and always should strive to sustain its validity if that may be done without doing actual violence to the language used in the act. Every intendment favorable to a conclusion sustaining the law must be indulged in."

An examination of the act discloses that the rights, duties and privileges of registrants and the board are clearly defined. In *G. F. Redmond & Co.* v. *Michigan Securities Commission,* 222 Mich 1, 5, we said:

"The power to carry out a legislative policy enacted into law under the police power may be delegated to an administrative board under quite general language, so long as the exact policy is clearly made apparent, and the administrative board may carry out in its action the policy declared and delegated, but it cannot assume it has been vested with power beyond expressed legislative delegation, and must ever seek its way in the light shed by the legislative mandate. This marks the line between arbitrary officiousness and the exercise of delegated pow-

er to carry out a designated policy under the police power."

The leaving of details of operation and administration to the board is not an objectionable delegation of legislative power. See *Waier* v. *State Board of Registration for Architects, Professional Engineers, & Land Surveyors,* 303 Mich 360.

While it is a fact that the definitions of architects and engineers are somewhat similar, yet there is a distinction. The services of an architect requires the application of the principles of architecture or architectural design, while the services of an engineer requires the application of engineering principles.

The act in question does not deny to defendant the equal protection of the law as guaranteed by the Federal and State Constitutions because it excludes from its effects architects or engineers working on a temporary basis, not to exceed 60 days, or being engaged in serving the United States, or those operating on interstate or railroad property, and other exceptions noted in the act. In *Straus* v. *Elless Co.,* 245 Mich 558, 563, we said:

"The classification is sufficient if it is practical and reasonable. It is not reviewable unless it is palpably arbitrary and unreasonable. A lack of abstract symmetry does not matter."

The exemptions enumerated in the act do not constitute obectionable discrimination so as to deny equal protection of the laws.

The object of the act is to safeguard the life, health and property of the citizens of the State by providing tests for each applicant, and to provide certificates

to those who meet the qualifications provided by the legislature. The act is constitutional.

The judgment of conviction is affirmed.

CARR, C. J., and BUTZEL, SMITH, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.