326 P.2d 348

**STATE BOARD OF TECHNICAL REGISTRATION, Appellants,**

**v.**

**Leonard F. McDANIEL, Appellee.**

**No. 6541.**

Supreme Court of Arizona.

May 28, 1958.

Rehearing Denied June 10, 1958.

Robert Morrison, Atty. Gen., and Robert G. Mooreman, Sp. Asst. Atty. Gen., for appellants.

Lewis, Roca, Scoville & Beauchamp, Phoenix, by John P. Frank, Phoenix, for appellee.

UDALL, Chief Justice.

This is an appeal from an order and judgment of the trial court in favor of Leonard F. McDaniel, petitioner-appellee. Therein a writ of prohibition was directed to John C. Park, chairman and the other members of the State Board of Technical Registration who are the appellants here but were the respondents in the court below. Hereinafter we will refer to appellants as the Board and to McDaniel as appellee.

The events antecedent to the proceedings below are these: Appellee McDaniel is a registered structural engineer engaged in the practice of his profession in Maricopa County. The Board, apparently believing that appellee was not conducting himself properly, made some preliminary investigation and then initiated disciplinary action against him by the filing of formal charges of professional misconduct. These charges may be summarized as: misuse of his seal, practicing architecture, and *aiding and abetting* an unregistered person to evade the registration law. In preferring these

charges the Board was proceeding under the provisions of the Technical Registration Act of 1935 which now appears as A.R.S. Title 32, Chap. 1, § 32–101 et seq., (hereinafter referred to as the Act).

A hearing on the charges was set by the Board for July 13, 1957, and notice thereof was served on appellee, wherein he was advised that his certificate as an engineer might be suspended or revoked "should such charges be substantiated." Prior to the date set for the hearing, the appellee filed an application for a writ of prohibition in the Superior Court of Maricopa County praying that the court prohibit the Board from considering the charges above mentioned. An order to show cause was issued and a hearing had thereon where the matters were briefed, orally argued, and taken under advisement. On July 8, 1957, the court entered the following order which forms the basis for the Board's appeal, viz.:

"The Court having fully considered the matter of the application for a Writ of Prohibition, finds that the charges one and two set forth in exhibit A of petitioner's application, being the charges made by the respondent, State Board of Technical Registration, do not constitute charges within the jurisdiction of said respondent upon which to base a hearing as set out therein.

"The Court further finds that as to charge No. 3, the statute on which the same is based is so ambiguous, indefinite and contradictory to the extent that, in the opinion of the Court, it is unconstitutional and also constitutes a possible delegation of legislative authority.

"It is ordered that the Writ of Prohibition issue as prayed."

█ █ The first assignment is that the superior court erred in issuing the writ of prohibition because the appellee was not entitled to this extraordinary writ since he had a plain, speedy and adequate remedy by appeal under the provisions of A.R.S., Title 12, Chap. 7, Art. 6, entitled "Judicial Review of Administrative Decisions." It was upon this legal theory that the Board principally relied in the lower court. Had appellee McDaniel submitted to the disciplinary hearing before the Board, unquestionably he could have had an adverse ruling first reviewed by the superior court (section 12–904 et seq.) and if it ruled against him then an appeal would lie to this court under section 12–913. Does it necessarily follow, as contended by appellants, that this statutory procedure for review is, *in all cases,* the *exclusive* and an *adequate remedy* for a registrant, such as appellee, who wishes to attack the jurisdiction and action of the Board? We think not. In the usual and ordinary situation—absent a jurisdictional question—such is the procedure that must be followed. We however

228

cannot agree that prohibition will not lie if it fairly appears to the trial court that in a given case the administrative agency is acting without or in excess of its jurisdiction and that an appeal will not furnish a plain, speedy and adequate remedy at law. See, Westerlund v. Croaff, 68 Ariz. 36, 41, 42, 198 P.2d 842, for a full discussion of the relevant factors, with many authorities; 42 Am.Jur., Prohibition, section 9, as to test of adequacy.

This court, in reviewing a grant of the writ of prohibition by a lower court, will not consider whether as an original proposition it would have granted such a writ but restricts its review to whether the lower court abused its discretion. We perceive a number of factors tending to justify the action taken by the trial court in its finding that the remedy of appeal was not adequate: e. g. questions as to the constitutionality of portions of the Act relied upon; grave doubts as to the legal sufficiency of the charges made; that the same acts charged might involve appellee McDaniel in a criminal prosecution under the criminal sections of the statute (see, Adolph Coors Co. v. Liquor Control Commission, 99 Utah 246, 105 P.2d 181); the extreme burden placed upon appellee in connection with the broad requirements of a subpoena issued in the matter; lack of jurisdiction of the Board; and the fact that a criminal case involving similar constitutional questions had already been certified to this court. On the whole record we hold the trial court did not abuse its discretion in the issuance of the writ in the instant case.

Generally speaking there can be no question as to the inherent power of the legislature to regulate professions such as engineering and architecture. As a matter of fact there are twenty-eight legally recognized and regulated professions and occupations in Arizona. See, A.R.S. Title 32. Such licensing laws are, without exception, based upon what is known as police power, inherent in state legislatures; that is, the power to enact any law deemed necessary for the protection of the property, peace, life, health and safety of the inhabitants of the state. See, McCawley, Professional Engineering Registration Laws (1954), page 587. However, while the State is fully entitled to regulate the trades and professions, it is not entitled to do so in statutes which are "so ambiguous, indefinite, and contradictory in its terms as to make impossible its intelligent administration for the benefit of the public." See, State v. Gee, 73 Ariz. 47, 236 P.2d 1029, 1031.

We agree with the Attorney General's abstract propositions of law to the effect that the legislature may (a) establish reasonable standards to be complied with as a prerequisite to engaging in such professional pursuits as architecture and engineering; (b) properly adopt the con-

venient and desirable expedient of providing for the appointment of a board of qualified persons to enforce prescribed standards; and (c), confer jurisdiction upon said board to take disciplinary action. Here the legislature has lawfully granted to such board the power to "Adopt by-laws and rules for the conduct of its meetings and the performance of duties imposed upon it by law." A.R.S. § 32–106, subd. A, par. 1. As to these basic principles there is virtually no disagreement. Our real problem, which stems from the disciplinary proceedings instituted before the Board, is whether the charges made against appellee are legally sufficient and if so whether the particular statutes on which they were predicated are constitutional.

Before getting down to the merits of the controversy, appellee raises the following proposition of law that should be considered, viz.:

"Where the State in a lower court defends against a writ of prohibition exclusively on jurisdictional grounds, and makes no defense on the merits, it cannot for the first time offer a defense on the merits in this court."

The Constitution of Arizona, Art. 6, section 6, provides, inter alia, that "Superior Courts and their judges shall have the power to issue writs of * * * prohibition * * *", and A.R.S. § 12–124, subd. C, merely states: "The superior court may issue writs of prohibition or other remedial writs necessary to carry out its powers." It should be noted that neither the statutes nor our rules prescribe the precise procedure to follow. Notice to the parties against whom the writ is being prosecuted is of course essential in order to satisfy due process. In the modern American practice this is accomplished either by the issuance of a rule to show cause, as was done here, or the issuance of an alternative writ of prohibition. 42 Am.Jur., Prohibition, section 43. However, good practice would dictate that a responsive pleading should have been filed by the State. This was not done. The only document filed was a "Memorandum (brief) in Denial of Writ of Prohibition" wherein the State's principal reliance was upon the legal principle that prohibition was not the proper remedy inasmuch as the right of appeal existed. In spite of this omission or irregularity we do not see that appellee was in anywise prejudiced. This for the reason that appellee McDaniel in his petition for the writ filed in the lower court specifically set forth a summary of the three charges made against him and urged as a matter of law that none of them were legally sufficient to give the Board jurisdiction to proceed against him in the disciplinary matter. The court's minutes reveal that at a hearing held on June 28, 1957, all parties were represented and the matter was fully argued and taken under

advisement. When a ruling was made ten days later, the order (heretofore set forth haec verba) reflects the learned trial court considered every phase of the case that had been advanced by either of the parties. Inasmuch therefore as only questions of law were raised and determined below we hold the State is not prohibited from offering a defense on the merits in this court.

Appellee contended below, and the trial court agreed, that charges one and two did not constitute charges, within the jurisdiction of the Board, upon which a hearing could be based. These charges were as follows:

"Comes Now, H. L. Royden and asserts under oath that Leonard F. McDaniel did violate the provisions of the code in the State Board of Technical Registration and is guilty of misconduct in the practice of his profession in that:

"1. The said Leonard F. McDaniel has been guilty of using his seal on plans other than Structural Engineering, in violation of Section 32–125 A.

"2. The said Leonard F. McDaniel has been guilty of practicing Architecture, in violation of Section 32–101 2."

The Board urges it had jurisdiction, under the express terms of the Act, to take disciplinary action as was attempted here.

Further, the charges brought against appellee were valid *charges of misconduct*, and when taken in the light of the preliminary investigation (of which appellee was fully apprised) were sufficient to inform him of their subject matter and as such comprised adequate notice upon which to base a formal hearing.

The Board further asserts the statutory references contained in the charges were merely to notify appellee of his violation of the disciplinary provisions of the code. The sections referred to as being violated are:

(1) "Section 32–125. *Seals for Registrants*.

"A. The board shall adopt and prescribe seals for use of registrants who hold valid certificates. Each seal shall bear the name of the registrant, shall state the vocation and, in the case of engineering, the branch or branches thereof he is permitted to practice, and other data the board deems pertinent."

(2) "Section 32–101. *Definitions*. (12 in all)

"In this chapter, unless the context otherwise requires:

\* \* \* \* \* \*

"2. 'Architectural practice' means \* \* \*." (then follows a lengthy definition of the term set out haec verba, infra).

Neither of these sections (1) which is

merely a directive to the board, and (2) a definition, could possibly be violated by appellee. Nor are they, as the Board contends, sufficient to apprise appellee of his purported misconduct.

■ Appellee contends that if he is guilty of anything it may be his acts constitute a misdemeanor under section 32–145, that is, practicing architecture without being so registered. Assuming, without deciding, that this may be so, this would not preclude his answering to the Technical Registration Board on grounds of professional misconduct as a licensed engineer. Indeed the Board would be remiss in its duty if it did not investigate complaints made to it to see if such acts constituted professional misconduct sufficient upon which to predicate formal charges.

■ The law is well settled that formal charges in an administrative disciplinary proceeding need not be stated with the technical niceties or formal exactness required of pleadings in a judicial proceeding. See, Botkin v. State Medical Board, Ohio Com.Pl.1950, 96 N.E.2d 215. However they should be sufficiently clear and complete to apprise the party to whom they are directed of the acts charged for which he must answer. If the Board would avoid the consequences of proceedings such as were instituted in the court below, the charges should be sufficient to establish that the Board is acting within its jurisdiction. We agree with the trial court, and so hold, that charges 1 and 2 do not constitute charges legally sufficient to confer jurisdiction on the Board upon which to predicate a formal disciplinary hearing under A.R.S. section 32–128, subd. B.

Lastly we consider the third charge which presents the most difficult problem. It reads:

3. "The said Leonard F. McDaniel has been guilty of aiding or abetting an unregistered person to evade the provisions of this chapter, in violation of Section 32–128 A. 3."

This latter section, infra, was enacted in 1956 and added a new ground for revocation of a certificate. .

A. "The board may take disciplinary action against the holder of a certificate under this chapter, charged with the commission of any of the following acts:

\*    \*    \*    \*    \*    \*

3. "Aiding or abetting an unregistered person to evade the provisions of this chapter or knowingly combining or conspiring with an unregistered person, or allowing one's registration to be used by an unregistered person or acting as agent, partner, associate or otherwise, of an unregistered person with intent to evade provisions of this chapter."

▬▬▬▬▬

Section 32–128, subd. A, par. 3, supra, is indefinite only insofar as it depends on the phrase "provisions of this chapter" for its meaning. The terms *aid* or *abet* and *evade* pose no real difficulty in interpretation. The real problem is: are the other sections of the Act, upon which this section depends for enforcement, capable of interpretation?

▬▬ We have held that a statute is not invalid merely because it is difficult to interpret. However it must be definite enough to serve as a guide to those upon whom it imposes a duty. Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854; Southwest Engineering Co. v. Ernst, 79 Ariz. 403, 291 P.2d 764. The statute cannot leave to conjecture that which is lawful or unlawful. State v. Walgreen Drug Co., 57 Ariz. 308, 113 P.2d 650.

Appellee urges this Act, regulating architects and engineers with similar definitions of each, does not give him a comprehensible notion of what he may or may not lawfully do in his profession. He uses the example that he is not sure whether if he hired an architect to draw architectural plans, and he, as a structural engineer, placed his seal thereon, he would be guilty of violating the Act and of aiding and abetting another to evade it.

▬▬ It appears to us the plain import of the entire Act is that an engineer place his seal on engineering plans, and an architect place his seal on architectural plans. While the two professions are in some respects similar, they are distinguishable professions, each dependent on similar but quite distinct principles. A.R.S. § 32–121, states:

"A person desiring to practice the profession of architecture, assaying, engineering, geology, or land surveying shall first secure a certificate of registration and shall comply with all the conditions prescribed in this chapter."

A.R.S. § 32–125, subd. B, reads:

"Plans, specifications, plats or reports prepared by a registrant or his bona fide employee, shall be issued under his seal."

If the legislature had not intended the professions to be distinguishable, requiring separate registration for each, they would not have so provided. The legislature needs to spell out its directives so persons governed thereby may set the course they will follow but it need not take such persons by the hand and guide them along an obvious pathway.

The legislature recognized the overlapping of the professions and provided in section 32–143 for exceptions. Therein they state:

"* * * a registered engineer may engage in the practice of architecture, * * *, but only to the *extent*

*that such person is qualified* and as such work may be necessary and incidental to the work of his profession." (Emphasis supplied.)

This prevents an unqualified person's signing of plans in another field; i. e., engineers placing their seal on architectural plans.

We now turn to the definitions of "architect" and "engineer" to see if they are so indefinite that a registrant (who somehow found them definite enough to receive registration in his chosen field) cannot determine when he is practicing one or the other of the professions.

A history of the development of the law regulating architecture and engineering in Arizona is revealing. An Act was first passed by the legislature in 1921. S.L. 1921, Ch. 135. Therein registration was open to one who "submits evidence satisfactory to the board that he is fully qualified to practice architecture, engineering or * * *." The terms were not defined. In R.C.A.1928, Ch. 58, engineer was defined and it was expressly provided (thereafter deleted) that a registered engineer could practice architecture and vice versa. In 1935 the section was amended and the definitions first appeared. S.L. 1935, Ch. 32, appearing in A.C.A.1939 as section 67–1802. The definition of engineer was slightly changed by S.L.1952, Ch. 144, and we are presently concerned with the definitions and the entire Act as set forth in A.R.S. §§ 32–101 to 32–145 inclusive. The terms of the Act have been sufficient to allow its adequate administration for over three decades without any prior appeal to this court.

The definitions of engineering and architecture are very similar. We will examine the problem thereby created by comparing our statute on architects and architectural practice with those of Michigan. In the well-reasoned case of People v. Babcock, 1955, 343 Mich. 671, 73 N.W.2d 521, 523, a registered professional engineer was convicted of unlawfully using a title tending to convey the impression that he was an architect, although not registered as such. On appeal he urged the Act was unconstitutional because:

"It is so vague and indefinite that to convict a defendant under this Act would be a denial of due process of law * * *.

"That said Act attempts to delegate legislative authority to an administrative agency without providing any yardstick for the exercise of its authority contrary to the due process clause of the 14th Amendment * * *."

These same grounds are urged here and we set forth a comparison of the definitions of architecture in the Michigan and Arizona statutes:

*Arizona*

" 'Architect' means a person who,

by reason of his knowledge of the mathematical and physical sciences, and the principles of architecture and architectural engineering,

acquired by professional education, practical experience, or both, is qualified to engage in the practice of architecture

as attested by his registration as an architect.

" 'Architectural practice' means

any service or creative work requiring architectural education, training and experience, and the application of the mathematical and physical sciences and the principles of architecture and architectural engineering to such professional services or creative work as

consultation, evaluation, planning, design and supervision of construction

for the purpose of assuring compliance with specifications and design, in connection with any building, or site development.

*Michigan*

"The term 'architect' as used in this act shall mean a person who,

by reason of his knowledge of mathematics, the physical sciences, and the principles of architectural design,

acquired by professional education and practical experience is qualified to engage in architectural practice

as hereinafter defined.

"The practice of architecture within the meaning and intent of this act includes

any professional service such as

consultation, investigation, evaluation, planning, design, or responsible supervision of construction, alteration or repair in connection with any public or private structures, buildings, equipment, works or projects wherein the public welfare or the safeguarding of life, health, or property is concerned or involved,

A person shall be deemed to practice or offer to practice architecture who in any manner represents himself to be an architect, or holds himself out as able to perform any architectural service or other services recognized by educational authorities as architecture."

when such professional service requires the application of the principles of architecture or architectural design. * * *."

---

The above definitions are quoted from A.R.S. § 32–101, subds. 1 and 2, and from pages 523 and 524 of 73 N.W.2d of People v. Babcock, supra, quoting Michigan Stat.Ann.1953 Cum.Supp. section 18–84(2), Comp.Laws 1948 and Comp.Laws Supp. 1954, § 338.552. Section 18–84(2), supra, goes on to define professional engineer and land surveyor, as does the Arizona Act. The definitions of engineer and engineering practice are also similar.

The Michigan court then examined the section dealing with the qualifications of an applicant, Comp.Laws 1948, § 338.562 (similar to Arizona's and including the phrase "experience satisfactory to the board"). In examining the entire Act the court concluded, 73 N.W.2d at page 526, in affirming the judgment of conviction that:

"While it is a fact that the definitions of architects and engineers are somewhat similar, yet there is a distinction. The services of an architect requires the application of the principles of architecture or architectural design, while the services of an engineer requires the application of engineering principles."

Other states regulating architects and engineers in the same Act, with similar definitions as are contained in our Act, are: Missouri, V.A.M.S. § 327.020; Wisconsin, W.S.A. 101.31(2); Minnesota, Minnesota Statutes Annotated, § 326.02, subds. 2 and 3; Nebraska, Revised Statutes of Nebraska 1943, Reissue of 1950, § 81–840. There are two states whose definitions, combined in the same Act, are less comprehensive than ours: Virginia, Code of Virginia, § 54–17 "Definitions"—"(1) 'Architect' shall be deemed to cover an architect or an architectural engineer." In Clark v. Moore, 1955, 196 Va. 878,

86 S.E.2d 37 the court used the definition of civil engineering (not defined in their Act) as found in the Encyclopedia Americana, Vol. 6, P. 731. Tennessee regulates the two professions in the same Act without a definition of either. Tennessee Code Annotated, § 62–201 et seq. Other states also regulate the two professions in one Act.

The law is well settled in this jurisdiction that every legislative Act is presumed to be constitutional and every intendment must be indulged in by courts in favor of validity of such Acts. Giss v. Jordan, 82 Ariz. 152, 309 P.2d 779; Hudson v. Kelly, 76 Ariz. 255, 263 P.2d 362. The court will not declare a legislative Act unconstitutional unless satisfied beyond a reasonable doubt of its unconstitutionality. State v. Gastelum, 75 Ariz. 271, 255 P.2d 203. Legislation will not be stricken down as being unconstitutional if there can be found a legal basis for its validity, Hernandez v. Frohmiller, supra, and the Act will be given a construction consistent with validity if at all possible. Earhart v. Frohmiller, 65 Ariz. 221, 178 P.2d 436.

It is equally well settled that construction of a statute should be favored which will render every word operative rather than a construction which makes some words idle and nugatory. Powers v. Isley, 66 Ariz. 94, 183 P.2d 880; Hill v. County of Gila, 56 Ariz. 317, 107 P.2d 377. Every part of a statute must be given meaning and effect if it is possible to do so. State v. Dickens, 66 Ariz. 86, 183 P.2d 148.

It may well be that this Act could be better drawn and its meaning thereby made clearer. However, an examination of the Act discloses that the rights, duties and privileges of registrants and the Board are sufficiently defined. The leaving of details of operation and administration (to the Board), within the standards set forth by the legislature is not an objectionable delegation of legislative power. See, State v. Marana Plantations, 75 Ariz. 111, at page 114, 252 P.2d 87; Waier v. State Bd. of Registration, 303 Mich. 360, 6 N.W.2d 545. Contra, Krebs v. Thompson, 387 Ill. 471, 56 N.E.2d 761, and Prouty v. Heron, 127 Colo. 168, 255 P.2d 755. These last two cases, so strongly relied on by appellee, are distinguished in and not followed by the well-reasoned decision of our sister state in Hatfield v. New Mexico State Board of Reg., 60 N.M. 242, 290 P.2d 1077.

We hold that the third charge was a valid one, hence the trial court erred in

prohibiting a hearing thereon. The judgment of the lower court is reversed with instructions to quash its writ of prohibition and to dismiss appellee's petition.

Judgment reversed with directions.

WINDES, PHELPS, STRUCKMEYER and JOHNSON, JJ., concur.