STATE OF DELAWARE, Plaintiff, v. FRANK N. DURHAM, Defendant.

(*May* 22, 1963.)

CHRISTIE, J., sitting.

*James J. Walsh* for defendant.

*W. Laird Stabler, Jr.,* Deputy Attorney-General, for the State.

Superior Court for New Castle County, Nos. 485, 486, 487, Criminal Action, 1960.

CHRISTIE, Judge.

The defendant, Frank N. Durham was charged with unlawfully using a title tending to convey the impression that he was a registered professional engineer when he was not in fact so registered in violation of 24 *Del. C.* Chap. 27. The indictment alleges that he permitted his name to appear on certain plans and drawings along with the title or description "Engineering and Design", and on a sign on the Professional Building in Newark, Delaware, with the title or description "Engineering and Design".

The defendant moved to dismiss the indictment challenging the constitutionality of the statute as being vague, indefinite, as being part of an Act with an inadequate title,

as an unlawful delegation of legislative authority to an administrative agency, and because it contains a so-called grandfather clause. The statute was first enacted in 1941 but its constitutionality has not been questioned heretofore.

The defendant's contentions will be taken up in the order in which they are raised.

### 1.

The defendant first contends that the statute is vague, indefinite and uncertain and therefore unconstitutional.

The defendant's attack upon the statute for vagueness is directed mainly at § 2701 which contains the following definition:

" '*Professional engineer*' means a person who is qualified by reason of his knowledge of mathematics, the physical sciences, and the principles of engineering, acquired by professional education and/or practical experience, to engage in the practice of professional engineering;

" '*Engineering*' means professional engineering;

" '*Practice of professional engineering*' includes any professional service, such as consultation, investigation, evaluation, planning, design, or responsible supervision of construction or operation, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works, or projects wherein, the public welfare, or the safeguarding of life, health or property is concerned or involved, when such professional service requires the application of engineering principles and data; but it does not include the work ordinarily performed by persons who operate or maintain machinery or equipment."

Another section sets forth educational and experience requirements for registration as an engineer. 24 *Del. C.* § 2722.

 The statute provides for the appointment of qualified and skilled persons in the field of professional engineering to the Board for the purpose of screening and certifying the qualifications of applicants. The purpose of such statute is "to safeguard life, health, and property". 24 *Del. C.* § 2721.

The value of a statute of this type was discussed in *Clayton v. Bennett*, 5 Utah 2d 152, 298 P.2d 531, at p. 533 (1956), where the Court said:

"It has been recognized since time immemorial that there are some professions and occupations which require special skill, learning and experience with respect to which the public ordinarily does not have sufficient knowledge to determine the qualifications of the practitioner. The layman should be able to request such services with some degree of assurance that those holding themselves out to perform them are qualified to do so. For the purpose of protecting the health, safety and welfare of its citizens, it is within the police power of the state to establish reasonable standards to be complied with as a prerequisite to engaging in such pursuits."

Professional engineering is recognized as one such occupation. See also *Hoff v. State*, 9 W.W.Harr. 134, 197 A.75 (Super. Ct. 1938).

In essence the defendant contends that the statute is vague as to what the term "professional engineering" entails, and that men of ordinary intelligence would have to guess at its meaning and would differ as to its application.

All 50 states, as well as the District of Columbia, the Canal Zone, and Puerto Rico now have laws for the licensure or registration of professional engineers. To assure the public of the professional qualifications of the men and women of the engineering profession, the laws of the vari-

ous states also govern the use of the words "professional engineer". In general it is illegal for a person to apply to himself that title, or to use any modification of it, that may lead to the belief that he is a professional engineer, if he has not qualified under the laws of one of the states or territories which have registration laws. Under these laws graduation from an accredited engineering college and a minimum of four years of responsible engineering experience is generally required. See Engineering A Career of Opportunity, National Society of Professional Engineers (1962).

A model registration law, endorsed by 13 of the principal national engineering organizations describes a professional engineer as one who applies the mathematical and physical sciences and the principles and methods of engineering analysis and design to professional or creative work in the investigation, evaluation, planning, design and supervision of construction of structures, machines, equipment, or processes.

This definition is deemed to exclude a large group of technicians who have been popularly called engineers but are in essence machine and engine operators, technical assistants and maintenance men. These are workers who were able to qualify for their position in a relatively short time, and whose training is on an elementary level in comparison to the engineers who are able to meet the requirements for registration. See Careers in Engineering, 3rd ed., Juvenal L. Angel (1959) p. 17.

A comparison of the definition in § 2701 with that of the model law reveals a very close similarity. Both definitions illustrate the desirability of a rather general definition. Detailed applications of such definitions must in some cases be left to the discretion of a Board which has the necessary skills and qualifications for carrying the

legislative intent into effective operation. The Board, however, is empowered to carry out an express legislative policy; it does not make such policy.

This is a reasonable balance between the requirement that a statute be clear and understandable and the administrative necessity for a reasonable degree of flexibility in meeting factual situations which could not be forseen by the General Assembly. The pattern set up by the Delaware statute is frequently found not only in the field of professional engineering but also in many fields of occupational licensing.

The defendant cites two cases, *Krebs v. Thompson*, 387 Ill. 471, 56 N.E.2d 761 (1944) and *Prouty et al. v. Heron et al.*, 127 Colo. 168, 255 P.2d 755 (1953) in support of his position. It is admitted by the State that the statutes in these cases are almost identical with the Delaware statute in question. The statutes in the above cited cases were held to be unconstitutional and the State makes no attempt to distinguish them from the case at bar. However, the State cites two more recent cases where statutes almost identical to the Delaware statute have been held to be constitutional. *People v. Babcock*, 343 Mich. 671, 73 N.W. 2d 521 (1955) and *State Board of Technical Registration v. McDaniel*, 84 Ariz. 223, 326 P.2d 348 (1958).

The holdings of the cases cited above are not reconcilable. For the reasons stated I am of the opinion that the cases upholding the statutes are correct and I decline to follow the rationale advanced in the Krebs and Prouty cases cited by defendant.

The second issue raised by the defendant is based on an argument that the statute in question violates Article II, Section 16 of the Delaware Constitution, *Del. C.* which requires that "[n]o bill * * * shall embrace more than one subject, which shall be expressed in its title."

The statute is part of the *Delaware Code*, the title of which has been held to meet the constitutional requirements. *Monacelli v. Grimes*, 9 Terry 122, 99 A.2d 255 (1953). This argument is without merit.

Defendant further contends that the statute is unconstitutional as an unlawful delegation of legislative power to an administrative body. This argument is closely related to that based on the alleged vagueness of the statute and many of the same cases are cited.

Delaware recognizes the necessity for the delegation of legislative authority to an administrative body. As was said in *Hoff v. State*, 9 W.W.Harr. 134, 197 A. 75, (Super. Ct. 1938) :

"The power of delegation is based upon the necessity occasioned by the growing demands made upon legislative bodies by the ever increasing complexity of human affairs. It is conceded that it is difficult to mark the line which separates the legislative power to make laws from administrative authority to make regulations; * * *.

\* \* \* \* \* \*

"The Legislature must declare the policy of the law, and must establish some principle or rule of action which is to control in given cases. In other words, the Legislature must provide an adequate yardstick for the guidance of the administrative body empowered to execute the law; for, to uphold a delegation of power there must be discovered in the terms of the Act a standard reasonably clear whereby discretion must be governed."

Generally, a statute or ordinance vesting discretion in administrative officials without fixing any adequate standards for their guidance is an unconstitutional delegation of legislative power. But a qualification to that rule is that where the discretion to be exercised relates to po-

lice regulation for the protection of public morals, health, safety, or general welfare, and it is impracticable, to fix standards without destroying the flexibility necessary to enable the administrative officials to carry out the legislative will, the legislation delegating such discretion without such restrictions may be valid. Adequate safeguards and standards to guide discretion must be found in or be inferable from the statute, but the standards need not be minutely detailed, and the whole ordinance may be looked into in light of its surroundings and objectives for purposes of deciding whether there are standards and if they are sufficient. *Pressman v. Barns*, 209 Md. 544, 121 A.2d 816 (Md.Ct.App.1956), *Moyant v. Borough of Paramus*, 30 N.J. 528, 154 A.2d 9, (1959).

The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increase. Davis Administrative Law Text, (1959) p. 50; *Pressman v. Barns, supra; Hoff v. State, supra.*

Taking Chapter 27 as a whole, the rights, duties and privileges of registrants and the Board are clearly defined, and adequate safeguards are provided whereby registrants may bring their grievances to court in the case of arbitrary or capricious action or an abuse of discretion by the Board.

 The Board has the duties of determining the subjects of which one must have knowledge in order to be fit to practice as a professional engineer, the extent of knowledge in each subject, the degree of skill requisite, and the procedure to be followed in conducting examinations when required. These are matters appropriately committed to an administrative board. A legislature may delegate to

such board the function of determining these things as well as the function of determining whether the applicant complies with the detailed standards of fitness.

The facts in *People v. Babcock,* 343 Mich. 671, 73 N.W.2d 521 (1955), cited by the State are analogous to the facts of the case at bar. There, defendant, a registered engineer was convicted of unlawfully using a title tending to convey the impression that he was an architect, in violation of a section of the Michigan Act, pertaining to Architects, Professional Engineers and Land Surveyors. Defendant claimed that the Act was unconstitutional for the same reasons set forth in the instant case. In upholding the validity of the Act the court in effect said that leaving the details of operation and administration to the Board is not an unconstitutional delegation of legislative power. The statute is almost identical with ours. See also *State Board of Technical Registration v. McDaniel,* 84 Ariz. 223, 326 P.2d 348 (1958). I agree with the rationale of these cases.

The defendant cites *Prouty v. Heron,* 127 Colo. 168, 255 P.2d 755 (1953) in support of his position. In the Prouty case, plaintiff was duly licensed to practice the profession of engineering in the State of Colorado in 1921. Thereafter, plaintiff left the State of Colorado returning in 1945, at which time he reapplied for registration as a professional engineer. He was issued a registration card certifying that he was especially qualified to practice in the branch of civil engineering. Plaintiff protested the limitation implied by this qualified registration, and requested a license without limitation or classification, but was refused. The court held that since plaintiff met the requirements of the Board in 1921 and was issued a license without restriction then, that he acquired a valuable property right fully protected and covered by the due process clause of the 14th Amendment, which could not be abridged

or denied by statute except after due notice and a fair and impartial trial or hearing. The court went on, however, to find the statute unconstitutional on the ground that the statute unlawfully delegated legislative authority to the Board. See also *Krebs v. Thompson,* 387 Ill. 471, 56 N.E. 2d 761 (1944).

As was indicated earlier it is impossible to reconcile these conflicting cases but I regard as correct those indicating that the statute is constitutional.

The defendant further contends that the statute is unconstitutional in that it contains a "grandfather clause" which permits residents practicing for at least one year prior to April 18, 1941, to be licensed without meeting some of the qualifications required of those seeking registration thereafter.

Grandfather clauses are universally recognized and embodied in occupational laws. They are not discriminatory since they provide for a reasonable classification within a class. See annotation in 4 ALR 2d 667. Defendant's argument on this ploint is without merit.

For the reasons stated, the defendant's motion to dismiss the indictment is denied.