**OHIO SOCIETY OF PROFESSIONAL ENGINEERS et,
Plaintiffs-Appellees, v. HULSLANDER et,
Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21264. Decided September 26, 1949.

Ira E. Arnold, H. R. Hawgood, Cleveland, for plaintiffs-appellees.

S. J. Blair, R. J. Newton, E. J. Krock, Cleveland, for defendants-appellants.

## OPINION

Per CURIAM:

This is an appeal on questions of law from a judgment in a civil case wherein the defendant was found guilty of contempt of court for violation of an injunction issued at the instance of the plaintiffs.

The action originated in the common pleas court of Cuyahoga County on January 14, 1947, when a petition for injunction and equitable relief was filed by the Ohio Society of Professional Engineers, an Ohio corporation not for profit, and by William C. Kammerer, individually and in behalf of said Society, as parties plaintiff, against the defendant, Ray D. Hulslander and three other defendants, praying for a permanent injunction under and by virtue of §1083-1 to 1083-26 GC, both inclusive, to enjoin the defendants from "practicing or offering to practice engineering within the State of Ohio, or using the word 'engineer' or any word of like import in connection with their name or their business."

Thereafter, upon application of the plaintiffs, the court dismissed all defendants except the single defendant, Ray D. Hulslander, against whom the action then proceeded.

On November 12, 1947, a journal entry was signed by the trial court whereby the defendant, Ray D. Hulslander was "perpetually enjoined from practicing or offering to practice engineering either directly or indirectly, in the State of Ohio, or using the word "engineer" or any word or words of like import, in connection with or in reference to himself, unless and until he becomes registered by the Ohio State Board of Registration for Professional Engineers and Surveyors."

He was further "perpetually enjoined from listing, publishing or advertising in any directory or any periodical, or from otherwise in any manner or form, either expressly or impliedly, advertising, publishing or representing that Ray D. Hulslander or any legal entity with which he may be associated, may engage in the practice of engineering in the State of Ohio." No appeal was prosecuted from this decree.

Subsequently, on August 13, 1949, charges in contempt were filed by plaintiff against defendant, charging him with failure to comply with the injunctive order of the court in that he had published or caused to be published, in the June, 1948, issue of the telephone directory, the words "Aimes Engineering Company" in the alphabetical section thereof, and the same name in the classified section thereof under the headings "Engineers—Mechanical"—"Engineers—Structural."

It was further alleged that said defendant was associated with Aimes Company Inc., and that as a result of said listings he violated the injunction issued on November 12, and was "in contempt thereof."

On September 2, 1948, the defendant was tried upon said charges of contempt, found guilty, fined $500.00 and costs and sentenced to ten days in the county jail therefor.

There are four assignments of error as follows:

"1. In overruling motion of defendant, Ray D. Hulslander, for the dismissal of the contempt charges.

2. In overruling motion of defendant, Ray D. Hulslander, at the conclusion of plaintiffs' evidence, for a judgment for defendant.

3. The final judgment and order are not sustained by sufficient evidence.

4. The final judgment and order are contrary to law."

Insofar as is pertinent to this case, §1083-1 et seq, GC, under which the injunction was issued and the defendant later brought to trial on the charge of contempt, reads:

"Sec. 1083-1 GC Purposes of Act.

That **in order to safeguard life, health and property** any person practicing or offering to practice the professions of engineering * * * shall hereafter be required to submit evidence that he is qualified so to practice, and shall be registered as hereinafter provided; and it shall be unlawful for any person to practice or to offer to practice the professions of engineering * * * in this state, or to use in connection with his name or otherwise to assume, use or advertise any title or description tending to convey the impression that he is a professional engineer * * * unless such person has been duly registered **or exempted under the provisions of this act.**"

The terms "professional engineer" and "practice of professional engineering" are defined by the act as follows:

"Sec. 1083-2 GC. Definition of terms.

The term 'professional engineer' as used in this act shall mean a person who, by reason of his knowledge of mathematics, the physical sciences and the principles of engineering, acquired by professional education and practical experience, is qualified to engage in engineering practice as hereinafter defined."

"The practice of 'professional engineering' within the meaning and intent of this act includes any professional service such as consultation, investigation, evaluation, planning, design or responsible supervision of construction or operation, in connection with any public or privately owned public utilities, structures, buildings, machines, equipment, processes, works

or projects, wherein the public welfare or the safeguarding of life, public health or property is concerned or involved, when such professional service requires the application of engineering principles and data * * *."

It will be observed from an examination of the foregoing provisions of the statute that the prime purpose of the act is to protect the public from the unauthorized practice of professional engineering as defined by the act. This purpose is clearly indicated in the first words of §1083-1 GC, and in the second paragraph of §1083-2 GC.

These sections differentiate between professional engineering therein intended to be regulated and the other fields of engineering not intended to be regulated and which by their very nature could not be the subject of regulation. It therefore follows that all engineering remains unaffected under the act except that which involves or concerns the safeguarding of life, public health or property. It should then be noted that after the act undertakes to regulate certain kinds of engineering involving public health, welfare and safety, it then provides for exemptions from the provisions of the act. These exemptions are set forth in §1083-20(g) GC, as follows:

"Sec. 1083-20 GC (Persons exempt from act). The following persons shall be exempt from the provisions of this act, to-wit * * * (g) Nothing in this act shall be construed as requiring registration for the purpose of practicing professional engineering or surveying by an individual, firm or corporation on property owned or leased by said individual, firm or corporation, unless the same involves the public safety or public health; or **for the performance of engineering or surveying which relates solely to the design or fabrication of manufactured products.**"

That the provisions of the act do not apply to those engaged in designing or fabricating manufactured products was recognized by the Attorney General of Ohio, the legal advisor of the State Board of Engineers and Surveyors, in an informal opinion (No. 199) dated May 2, 1947. He there stated in substance that engineering relating to the design and construction of all kinds of aircraft for every purpose, including commercial, military and experimental aviation, and the designing and construction of all devices, contrivances, and accessories pertaining to such aircraft including engines, motors and other machinery of every sort, while they would

constitute the practice of professional engineering, obviously came within the exemption of §1083-20(g) GC. This opinion was given in pursuance·of a request by the Secretary of State who had refused to accept for filing proposed Articles of Incorporation of a company which included in its Charter the purposes above described. This construction appears to us to carry the force of logic and reason.

Referring now to the original decree herein, there is no finding by the trial court that the defendant actually practiced "professional engineering" as defined by the statute. However, the defendant was enjoined from practicing or "offering to practice engineering" or from using the word "engineer" or any word or words of like import. Further the decree does not in specific terms enjoin the defendant from performing or offering to perform any of the particular services described in §1083-2 GC as the practice of "professional engineering."

The decree uses only the term "engineering" which is a generic term covering many phases of human activity which does not come within the classification of "professional engineering" as defined by the statute.

Also, it is important to observe that in the publication of which complaint is made, defendant did not use the term "professional engineer" which is specifically prohibited by the statute. Consequently it cannot be said that the mere use of the generic term "engineer" would be, per se, a violation of the act. To warrant a finding of guilty it would be necessary to show by the requisite degree of proof that the defendant was actually engaging in the practice of "professional enginering" or actually holding himself out as engaging in such practice as defined by the act.

In our opinion the injunctive decree could not, by its terms, rise higher than the act (§1083-1 et seq GC) from which the court derived its jurisdiction in the first instance. In other words, it is not within the province of the court to broaden or extend the meaning of "professional engineering" beyond the provisions of the definition of the term as set forth in the statute. Its provisions should therefore be construed to prohibit only those activities proscribed by the statute. Concerning this phase of the subject, the Supreme Court of Illinois, in the case of Krebs v. Thompson, 387 Ill 471, passing upon a statute similar to that under consideration herein, said in part:

"Where an act defines terms therein used, those terms must be construed according to the definition of the act and as the act to regulate professional engineering attempts to define

the term 'professional engineering' by referring to other terms not defined and leaves to the examining committee provided in the act the power to determine its application, it is invalid as a delegation of legislative power." (paragraph 4, syllabus)

And at page 477 the court say:

"It will be noted that the definition contained in Section 2 gives little insight into what activities are included in the act. Briefly stated, the term 'professional engineering' is there defined to mean any professional service wherein the public welfare or the safeguarding of health, life or property is concerned or involved, when such professional service requires the application of engineering principles and data. When an act defines the terms therein used, those terms must be construed according to the definitions contained in the act. Smith v. Murphy 384 Ill. 34; Rozran v. Durkin, 381 Ill. 97."

From an examination of the evidence as shown by the record, it appears that some time in December, 1947, after the issuance of the injunction, the defendant sought the advice of counsel who advised him as to his rights and liabilities under the injunctive decree and that he conformed to such advice.

The evidence further shows that the defendant was President of the Aimes Company Inc., and that the company for a period of time built centrifugal casting machines; built permanent molds and did only the structural detailing of ship-loading towers all of which in our opinion comes within the exemptive provisions of §1083-20 GC.

Upon consideration of all the evidence, the members of this court are unanimously of the opinion that the evidence shows the business activities of the defendant related solely to the design or fabrication of manufactured products.

Construing the provisions of the injunction in the light of the act, it is our conclusion that there is no evidence showing that defendant violated the injunction and the finding and judgment below is therefore not supported by any evidence upon a material issue. The judgment therefore should be reversed and the decree for the defendant appellant.

Judgment reversed and decree for defendant appellant. Exceptions. Order see journal.

SKEEL, PJ, FESS, J, HURD, J, concur.