NORTH CAROLINA STATE BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS AND LAND SURVEYORS v. INTERNATIONAL BUSINESS MACHINES CORPORATION AND KENNETH M. FURR

No. 7610SC454

(Filed 15 December 1976)

1. **Professions and Occupations— "Customer Engineer" — repairer of business machines — use of term not prohibited**

   Use of the term "Customer Engineer" by defendant to refer to its employees who install, maintain and repair its business machines is not a violation of G.S. 89C-2 and G.S. 89C-23 which prohibit the practice or offer to practice engineering without proper registration.

2. **Professions and Occupations — board regulating practice of professional engineering — title of "engineer" — limitation of use**

   G.S. 89C-2 and 89C-23, statutes regulating the practice of professional engineering, authorize the plaintiff to prohibit only those uses of the title "engineer" which imply or represent professional engineering status or expertise.

3. **Professions and Occupations— use of title "engineer" — limitation of use improper**

   Plaintiff's argument that G.S. 89C authorizes it to prohibit all *external* uses of the word "engineer" as opposed to uses within a business, organization or government is without merit.

4. **Professions and Occupations—"Customer Engineer" — use of title not practicing of engineering**

   In an action to enjoin defendant from practicing engineering and from using the title "Customer Engineer" on calling cards and in communications with the general public, the trial court properly granted summary judgment for defendant and correctly concluded as a matter of law that the mere use of the term "Customer Engineer" on business cards and in a newspaper article did not constitute the offering to practice engineering or the representation of professional engineering status or expertise in violation of G.S. 89C-2.

APPEAL by plaintiff from *Bailey, Judge.* Judgment entered 30 December 1975 in Superior Court, WAKE County. Heard in the Court of Appeals 13 October 1976.

The North Carolina State Board of Registration for Professional Engineers and Land Surveyors (hereinafter Board) instituted this civil action in February 1975 under Chapter 89 of the General Statutes of North Carolina to enjoin International Business Machines Corporation (hereinafter IBM) and Kenneth M. Furr, an IBM employee, from practicing engineering and

> "from using the titles 'customer engineer', 'engineer', or 'engineering' on calling cards and in communications with the general public, and from making any other representation that IBM employees, who are not registered or qualified under Chapter 89 of the General Statutes, are engineers."

The Board alleged that the defendant Furr and others, who are employed by IBM to install, maintain, and repair the business machines which it manufactures, are not registered engineers under Chapter 89. The Board further alleged that these employees are designated by IBM as "customer engineers"; that they work on premises other than those of IBM; and that they use calling cards bearing the employee's name and the title "customer engineer." The Board alleged that the use of this card in conjunction with the performance of services at facilities other than those of IBM is a practice which violates Chapter 89 in that it constitutes a representation and holding out that such unlicensed employees perform engineering services. The Board also alleged an additional unlawful representation in violation of Chapter 89 by defendant Furr. The basis for this allegation was an article published in the Greensboro Daily News, a newspaper of general circulation in that area, which reported Furr's candidacy as a Republican for a seat in the General Assembly and which described him as a "computor customer engineer."

In their answer defendants admitted that "customer engineers" installed, maintained, and repaired business machines and systems and that the company furnished these employees with calling cards bearing the name of the employee, the title "customer engineer," and the business address and telephone number of the employee. Defendants contended that Chapter 89 regulated the practice of *professional* engineering and did not

> "prohibit the use of the term 'engineer' or the practice of engineering where the term and the practice does not

involve 'professional' engineering or the practice of 'professional' engineering as defined in the Statute."

Defendants further contended that the use of the term "customer engineer" falls within exceptions in the statute. Defendants have not contended that the State may not constitutionally regulate the practice of professional engineering. They do contend that if the statute were construed to prohibit the use of terms which do not convey a representation of professional engineering expertise, it violated Article I, Sections 1, 19 and 34 of the North Carolina Constitution and Article I, Section 8, Clause 3 and the First and Fourteenth Amendments of the Constitution of the United States. Defendants also counterclaimed for an injunction prohibiting the Board from interfering with their use of the word "engineer" when not modified by the word professional.

After the pleadings were filed, Chapter 89 was amended and rewritten by Session Law 1975, c. 681, s. 1, effective 19 June 1975. Amended pleadings were filed to conform to the new statute, Chapter 89C.

On 19 September 1975, defendants moved for a summary judgment. Memoranda of law, exhibits and affidavits were filed in support of and in opposition to the motion. After hearing, the court entered summary judgment for defendants on both claim and counterclaim concluding that defendants were not engaged in the practice of professional engineering; that their activities and accompanying use of the term "customer engineer" were exempt under the statute; and that the term "engineer" is a generic term with many uses and variations which do not represent a danger to the public and which the Board is not authorized to pre-empt by Chapter 89C. Plaintiff appeals.

*Attorney General Edmisten by Assistant Attorney General James E. Magner, Jr.; Bailey, Dixon, Wooten, McDonald & Fountain by Wright T. Dixon, Jr., and Ralph McDonald for plaintiff appellant.*

*Manning, Fulton & Skinner by Howard E. Manning; International Business Machines Attorneys Howard G. Ziff and Edward T. Buhl for defendant appellees.*

CLARK, Judge.

The issue presented upon appeal is whether the designation and use of the term "customer engineer" by defendant IBM

and its employees who install, maintain, and repair its business machines is prohibited by the North Carolina Engineering and Land Surveying Act, Chapter 89C of the General Statutes of North Carolina.

The determination of this issue requires the construction of relevant provisions of the Engineering and Land Surveying Act, now codified as Chapter 89C. The original legislation empowering plaintiff Board to regulate the practice of engineering and land surveying was enacted in 1921. Act of 25 February 1921, Pub. Laws, ch. 1. There was a comprehensive revision of the Act in 1951. Act of 14 April 1951, Session Laws, ch. 1084. There have been several minor amendments since 1953. There were amendments in 1975 which rearranged and rewrote some of the sections for clarity. Act of 19 June 1975, Session Laws, ch. 681. However, the legislative history does not significantly aid us in construing the Act.

The present Act makes it unlawful "for any person to practice or to offer to practice engineering or land surveying in this State, as defined in the provisions of this Chapter, or to use in connection with his name or otherwise assume or advertise any title or description tending to convey the impression that he is either a *professional* engineer or a registered land surveyor, unless such person has been duly registered as such. . . ." (Emphasis added.) G.S. 89C-2.

The term "the practice of engineering" is defined by G.S. 89C-3 (6) a, as follows:

"A person shall be construed to practice or offer to practice engineering, within the meaning and intent of this Chapter . . . who, by verbal claim, sign, advertisement, letterhead, *card,* or in any other way represents himself to be a *professional* engineer, or through the use of some other title implies that he is a *professional* engineer or that he is registered under this Chapter. . . ." (Emphasis added.)

The penal section of the Act, G.S. 89C-23 provides that

"Any person who shall practice, or offer to practice, engineering or land surveying in this State without first being registered in accordance with the provisions of this Chapter, or any person, firm, partnership, organization, association, corporation, or other entity using or employ-

ing the words 'engineer' or 'engineering' or 'professional engineer' or 'professional engineering' or 'land surveyor' or 'land surveying,' or any modification or derivative thereof in its name or form of business or activity except as registered under this Chapter or in pursuit of activities exempted by this Chapter . . . in addition to injunctive procedures set out hereinbefore, shall be guilty of a misdemeanor. . . . In no event shall there be representation of or holding out to the public of any *engineering expertise* by unregistered persons. . . ." (Emphasis added.)

The plaintiff Board does not contend that defendant Furr and other IBM employees who install, maintain, and repair IBM business machines are doing the work of professional engineers. It contends that the use of the title "customer engineer" by IBM and its employees (1) is a representation that these employees are professional engineers (G.S. 89C-3(6)a), and (2) is a "holding out to the public" that they possess "engineering expertise" (G.S. 89C-23).

[1] The Board contends that defendants' representations of professional engineering status constitute the unregistered practice of engineering as that term is defined in G.S. 89C-3(6)a. A "professional engineer" is defined by G.S. 89C-3(8) as "a person who has been duly registered and licensed as a professional engineer by the Board." It is clear from this definition that the use of the word "engineer" without being modified by "professional," "registered," or "licensed," or some word of like import does not represent that one is "duly registered and licensed by the Board" and therefore cannot represent that one is a professional engineer as that term is defined in G.S. 89C-3(8). Since such usage does not represent professional engineering status, it cannot constitute the practice of engineering as that term is defined in G.S. 89C-3(6)a. We hold, therefore, that such usage is not a violation of those provisions of G.S. 89C-2 and G.S. 89C-23 which prohibit the practice or offer to practice engineering without proper registration.

We turn now to a consideration of whether the previously quoted provision of G.S. 89C-23 providing penalties for use of the words "engineer" or "engineering" or any modification thereof except as registered or exempted in the Chapter authorizes the Board to prohibit the uses which do not imply or represent professional status or expertise.

The language in this sentence of G.S. 89C-23 appears to be an absolute prohibition, and were it to stand in isolation, might support the Board's construction of the statute. When read in conjunction with other provisions of Chapter 89C, a more narrow meaning appears. G.S. 89C-23 itself further states that

". . . In no event shall there be representation of or holding out to the public of any *engineering expertise* by unregistered persons. . . ." (Emphasis added.)

G.S. 89C-2 entitled "Declarations; prohibitions" states that:

*"In order to safeguard life, health, and property, and to promote the public welfare,* the practice of engineering and the practice of land surveying in this State are hereby declared to be subject to regulation in the public interest. It shall be unlawful for any person to practice or to offer to practice engineering or land surveying in this State, as defined in the provisions of this Chapter, or to use in connection with his name or otherwise assume or advertise any title or description tending to convey the impression that he is either a *professional* engineer or a registered land surveyor, unless such person has been duly registered as such. . . ." (Emphasis added.)

G.S. 89C-3 (2) defines an engineer as "a person who, by reason of his special knowledge and use of the mathematical, physical and engineering sciences and the principles and methods of engineering analysis and design, acquired by engineering education and engineering experience, is qualified to practice engineering." Finally, the plaintiff's name, as provided in G.S. 89C-4, is the State Board for the Registration for *Professional* Engineers and Land Surveyors. (Emphasis added.)

We think that a reading of the Chapter as a whole makes it clear that the Legislature was not unmindful of the generic meaning of the term "engineer" and its widespread usage in job titles in our society to describe positions which require no professional training. Judicial notice may be taken of the fact that garbage collectors are now called sanitation engineers and that janitors are called custodial engineers. *Koontz v. City of Winston-Salem,* 280 N.C. 513, 186 S.E. 2d 897 (1972) ; *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972). Defendants' Exhibit 4 contained a list of several job titles used by the

State itself which contain the word engineer and which are not limited to professional engineers, such as television engineer, environmental engineering technician, engineering design technician and ferry engineer. Defendants offered other evidence which showed that terms such as customer engineer and field engineer have long been used in the computer industry to describe persons engaged in repair and maintenance work.

Regulatory legislation which exists solely to promote the economic interests of a narrow special interest group cannot be sustained. Regulatory legislation will be sustained as a proper exercise of the police power when it has a rational relationship to the public health, safety, morals or general welfare. *State v. Ballance,* 229 N.C. 764, 51 S.E. 2d 731 (1949). If a statute is susceptible to two interpretations, one constitutional and the other unconstitutional, the former will be adopted. *Milk Commission v. Food Stores,* 270 N.C. 323, 154 S.E. 2d 548 (1967); *Randleman v. Hinshaw,* 267 N.C. 136, 147 S.E. 2d 902 (1966). A statute imposing criminal penalties must be strictly construed even in civil proceedings brought thereunder. *Vogel v. Supply Co.* and *Supply Co. v. Developers, Inc.,* 277 N.C. 119, 177 S.E. 2d 273 (1970). A statute restricting the practice of an otherwise lawful occupation to a special class of persons must not be construed to extend to activities and transactions not intended by the Legislature. *McArver v. Gerukos,* 265 N.C. 413, 144 S.E. 2d 277 (1965).

G.S. 89C-2 makes it clear that Chapter 89C has the legitimate purpose to "safeguard life, health, and property." We think that the broad language of G.S. 89C-23 must be read with this purpose in mind. G.S. 89C-23, the part of the statute prescribing penalties, must be read subject to the basic prohibitory section of the statute, G.S. 89C-2, which makes it unlawful "to use in connection with his name or otherwise or advertise any title or description tending to convey the impression that he is . . . a *professional* engineer . . . unless such person has been duly registered as such." (Emphasis added.)

We think the statute when read as a whole makes it clear that the Legislature's intent in the "representation," "conveying," and "holding out" provisions of the chapter was to protect the public from misrepresentations of professional status or expertise. There must be a representation of registration with the Board or of engineering expertise or of special knowledge and ability to use mathematical, physical, and engineering

sciences or of the principles and methods of engineering analysis and design.

**[2]**   We hold, therefore, that G.S. 89C-2 and 89C-23 authorize the Board to prohibit only those uses of the title engineer which imply or represent professional engineering status or expertise.

Since we are construing a statute, the decisions of other jurisdictions with statutes of differing language are of limited use. Nonetheless we note that several jurisdictions have construed their statutes as not applying to ordinary and common uses of the word engineer and engineering. *State v. Durham,* 56 Del. 170, 191 A. 2d 646 (1963) ; *State ex rel. State Board of Registration for Professional Engineers & Land Surveyors v. Richardson,* 291 N.E. 2d 373 (Ind. Ct. App. 1973) ; *Iowa State Board of Engineering Examiners v. Electronic Engineering Co.,* 261 Iowa 456, 154 N.W. 2d 737 (1967) ; *Ohio Society of Professional Engineers v. Hulslander,* 86 O. App. 497, 89 N.E. 2d 119 (1949) ; *State ex rel. Wisconsin Registration Board of Architects & Professional Engineers v. T. V. Engineers, Inc.,* 30 Wis. 2d 434, 141 N.W. 2d 235 (1966).

**[3]**   The Board argues that Chapter 89C authorizes it to prohibit all *external* uses of the word engineer. The Board concedes that with this power it could not prohibit the State from calling its janitors, in internal uses, a custodial engineer, but it asserts that with this power it could prohibit the State from calling the same employee a custodial engineer in response to a reporter's question. Want ads for custodial engineers could similarly be regulated as "external" uses. We find this distinction between internal and external uses most unpersuasive and cannot conceive that in its weakest moments our Legislature would pass a bill granting such extensive control over the English language to a board of engineers.

With the statute construed in this manner, we think it clear that the trial court correctly applied it to the facts in this case. The Board contends that a summary judgment was inappropriate because the question of whether there has been a "holding out" or "representation" is always a question of fact, or even if not always one, was raised by its pleadings and affidavits.

The Board has cited decisions of other jurisdictions construing statutes regulating professional engineering which con-

tain language to the effect that the determination of "holding out" or "representation" is a question of fact or is to be determined from the facts and circumstances in each case. *T. V. Engineers, Inc. v. District of Columbia,* 166 A. 2d 920 (Mun. Ct. App. 1961); *Iowa State Board of Engineering Examiners v. Electronic Engineering Co., supra,* (dictum). In the Wisconsin *T. V. Engineers, Inc.* case, although the court used ambiguous language of this import, it decided as a matter of law that there had been no "holding out." See *Louisiana State Board of Registration for Professional Engineers & Land Surveyors v. Young,* 223 So. 2d 437 (La. Ct. App. 1969). In none of these cases was the issue raised upon a motion for summary judgment. Even though an issue is generally one of fact, where the facts are not controverted and the rights of the parties upon the facts are questions of law, the court may enter judgment. *Peoples v. Insurance Co.,* 248 N.C. 303, 103 S.E. 2d 381 (1958).

Plaintiff Board argues that even if this question is not always one of fact, its pleadings and affidavits, in particular that of its secretary, Robert Ruffner, raise the issue of fact in this case. The party moving for summary judgment may offer pleadings and affidavits, setting forth facts that would be admissible in evidence to show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. G.S. 1A-1, Rule 56(c). The non-movant may not rest upon the bare allegations of his pleadings, but must set forth *specific facts* showing that there is a genuine issue for trial. If he fails to do so, a summary judgment, if otherwise appropriate, shall be rendered against him. G.S. 1A-1, Rule 56(e). To support their motion for summary judgment, defendants offered affidavits from three customers of IBM who stated that they had never understood the term "customer engineer" to imply professional training nor had it ever been so represented to them by IBM personnel. Defendants also introduced copies of the business cards of customer engineers and other personnel.

The Board offered no opposing affidavits of persons who had been misled by defendants' use of the term "customer engineer" or to whom representations of professional status or expertise had been made. The Board's basic contention was that as a matter of law it could prohibit all "external" uses of the word engineer, and therefore it relied primarily upon the admission that customers were given the business cards of the

"customer engineers" and upon a newspaper article announcing defendant Furr's candidacy as a Republican for a seat in the Legislature in which he was described as a "computer customer engineer." The Board now contends that the affidavit of its secretary, Robert Ruffner, sufficiently controverts those of the IBM customers, but all that Ruffner stated was "that the Board's position" is that defendants are in violation of the statute by "representing and holding themselves out to the public as having engineering expertise" and by "offering to practice engineering by using the title 'engineer' in dealings with the public." This affidavit and plaintiff's other material state only conclusions to be drawn and do not raise a genuine issue of fact. A summary judgment is proper where the controversy is not as to the facts disclosed by the evidence, but rather as to the legal significance of those facts. *Blades v. City of Raleigh,* 280 N.C. 531, 187 S.E. 2d 35 (1972). A summary judgment may be proper even where based in part upon the affidavits of the movant and witnesses for the movant where there are only latent doubts as to the credibility of the affiants. *Kidd v. Early,* 289 N.C. 343, 222 S.E. 2d 392 (1976).

[4]   We find that the trial court properly granted a summary judgment and correctly concluded as a matter of law that the mere use of the term "Customer Engineer" on business cards and in a newspaper article does not constitute the offering to practice engineering or the representation of professional engineering status or expertise in violation of Chapter 89C-2.

Given our construction of the scope of the statute, we need not determine whether the usage of the term "customer engineer" falls within any of the exemptions contained in G.S. 89C-25(7)-(9). We think a reading of those sections will reinforce our interpretation of the Legislature's intent to limit the scope of Chapter 89C to representations, whether external or internal, of professional status or expertise, and that were the exempting provisions in issue, all would probably apply to the usage by the defendants.

Given our construction of the statute, we also need not pass on defendants' constitutional objections.

The judgment is

Affirmed.

Judges MORRIS and ARNOLD concur.